E-filing

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

MAHESH KUMAR PATHAK,
A78-659-983,
     Petitioner,

Civ. No. _____

**TEH**

v.

MICHAEL CHERTOFF, Secretary
Dept. of Homeland Security,

EDWARD C. FLORES, Chief of Correction,
Santa Clara County,
Department of Correction;

NANCY ALCANTAR, Field Office Director,
Office of Detention and Removal,
Immigration and Customs Enforcement;

ALBERTO R. GONZALES,
U.S. Attorney General;

     Respondents

PETITION FOR A WRIT
OF HABEAS CORPUS
PURSUANT TO
28 U.S.C. §2241

FILED

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

PETITION FOR A WRIT OF HABEAS CORPUS
PURSUANT TO 28 U.S.C. § 2241

## INTRODUCTION

Petitioner, Mahesh Kumar Pathak, by and through undersigned counsel, hereby petitions this Court for a writ of habeas corpus to remedy his unlawful detention, and to enjoin his continued unlawful detention by the Respondents. The Petitioner submits that the Respondents have unlawfully restrained him of his liberty in violation of the Immigration and Nationality Act and the Due Process Clause of the Fifth Amendment to the U.S. Constitution. In support of this petition and complaint for injunctive and declaratory relief, Petitioner alleges as follows:

1

## CUSTODY

1. Petitioner is in the physical custody of the Department of Homeland Security's Immigration and Customs Enforcement. He is currently detained at Santa Clara County Main Jail, 150 W. Hedding Street, San Jose, California 95110. Petitioner is under the direct control of the Respondents and their agents.

## JURISDICTION

2. This action arises under the Constitution of the United States, and the Immigration and Nationality Act ("INA"), 8 U.S.C. §1101 *et seq., as amended* by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), Pub. L. No. 104-208, 110 Stat. 1570, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.* This Court has jurisdiction under 28 U.S.C. §2241 and Article I §9, Clause 2 of the United States Constitution ("Suspension Clause"), and 28 U.S.C. §1331, as the Petitioner is presently in custody under color of the authority of the United States, and such custody is in violation of the Constitution, laws, or treaties of the United States. *See Zadvydas v. Davis*, 533 U.S.678, 121 S. Ct. 2491 (2001). This Court may grant relief pursuant to 28 U.S.C. §2241, 5 U.S.C. §702, 28 U.S.C. §1361 (Mandamus) and the All Writs Act, 28 U.S.C. §1651. *See also Magana-Pizano v. INS,* 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. Sec. 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are in custody in violation of the Constitution or laws or treaties of the United States.").

3. The Petitioner has not filed a prior writ of habeas corpus either in regard to the detention and restraint complained of herein or in regard to any other detention or restraint.

2

## VENUE

4. Venue lies in the United States District Court, Northern District of California, the judicial district in which the Respondents have exercised custodial control over the Petitioner and where the Petitioner currently resides. 28 U.S.C. §1391(e).

## STATEMENT OF FACTS

5. The Petitioner is a married 48-year old native and citizen of India. He is married to Diane Evans Pathak, a native born citizen of the United States. They have been married since June 20, 2006. A visa petition is presently pending with Citizenship and Immigration Services (WAC-07-224-51954). Based on his *bona fide* marriage, the Petitioner is prima *facie eligible* to adjust status.

6. Mr. Pathak entered the U.S. without inspection on or about May 20, 2000. On October 14, 2000, the Petitioner filed an affirmative application for asylum and withholding and was referred to the Immigration Judge ("IJ") for adjudication of the application. The Asylum Officer found the Petitioner not credible due to various minor inconsistencies. For example, the officer that the Petitioner's "testimony was internally inconsistent and inconsistent with his declaration. According to his declaration, he and his father repaired militants' guns twice, first at their home and again at their shop. Initially he testified that he and his father repaired the militants' guns once…When given an opportunity to explain, the applicant was unable to provide a reasonable explanation for these inconsistencies, and this inability to provide detail." *Assessment to Refer,* pg. 1, March 1, 2002. The Asylum Officer made no findings that the Petitioner was

3

engaged in terrorism or had provided material support to any terrorist organizations. *Id.*

7. At a hearing on May 16, 2002, the Petitioner through former counsel, admitted the allegations against him and conceded removability as charged in the Notice To Appear. The Petitioner testified in support of his applications for relief on April 30, 2003. The Petitioner testified that he was born on January 19, 1959 and was a "Kashmiri Hindu Pundit." (Tr., pg. 26). He left India because he "was in danger from the police as well as from Kashmiri terrorists." *Id.*

8. The Petitioner explained that his problems began in 1997—"In '97 I had a work shop, it was my father's work shop since 1950." (Tr., pg. 37). The Petitioner stated that he joined his father's work in 1978. In 1997, he "had four workers who used to work in my work shop, they were Muslims." *Id.* The shop was "located at Lal Chowk and it was located at the back of Surad Motors work shop." *Id.* Although there was much wringing of the hands about when the Petitioner was aware of militant/terrorist activity–1995 or 1997?–on closer inspection of the primary source document, the Petitioner's declaration, there is no dispute at all.

9. According to the Petitioner's declaration, "[i]n 1995 we came to know that there is something going wrong in our workshop, it was suspected that our workers had links with the militants. Because of fear we did not ask our workers to stop contacts with the militants." *Attachment to I-589.* The IJ's vivid imagination, however interpreted this as unequivocal proof that the Petitioner and his father "condoned, by allowing those workers to repair the automatic guns for the period from 1995 to 1997…[T]here is enough evidence in the record to make a

4

finding that not only the respondent and his father allowed or condoned the use of the work shop and the labor of the Muslim workers to repair the automatic guns with the knowledge about the nature of those activities." *Oral Decision, pg. 12-13.* The Petitioner's statement in the declaration establishes no such thing, however.

10. The Petitioner's statement establishes that the Petitioner and his father "suspected" that their Muslim employees had links to militants. There was no proof that such was the case, only a suspicion. Even in the United States under the present administration, proof of wrongdoing is still required in order to crucify someone or tar someone with the label of a terrorist. Mere suspicion is not a sufficient basis for action. Furthermore, the Petitioner's statement makes clear that they did not pursue their suspicions in part "[b]ecause of fear." Just as one does not approach a suspected murderer and ask if he is a murderer, the Petitioner and his father did not confront their employees with their suspicions. They feared reprisal and their fears were well founded in light of what happened when they did confront their employees.

11. "In January 1997 we had tried to convince our workers not to indulge in these types of activities. They informed the militants. In March 1997 militants came to our house at about 12 o'clock during night and knocked our door, my father opened the door and they entered our house and pointed the guns towards us and ordered us to repair their Sten guns (automatic guns). At that time my father, my wife and two children were there. We had repaired their Sten guns because they threatened to kill the whole family if we did not do their work." *Attachment to I-589.* Fearing not only their own lives but also the lives of their women and

5

children, the Petitioner and his father abided the militants' request. Remarkably, the IJ criticized the Petitioner for performing this work ("at least on one occasion, performed the repair job themselves in March 1997") at gunpoint.

12. Duress is variously defined as "compulsion by threat or force; coercion; constraint" and "forcible restraint." *Dictionary.com.* There should be little doubt, even among the most callous, that the Petitioner and his father repaired these weapons under duress. They were clearly coerced by threat and force to do so. It is disingenuous of the IJ to posture as the paragon of courage and moral integrity when he no doubt would have done the same thing: any reasonable person would have if only to save their family.

13. The IJ in his decision next attacked the Petitioner and falsely accused him of being "on the side of the militants." *Oral Decision, pg. 13.* He stated, "It isn't clear from the record as to whether or not the respondent himself, actively or not, were involved in that exchange of fire but suffice it to say that at the time it occurred, the respondent were [*sic*] on the side of the militants." *Id.* The Petitioner's declaration states,

> "In the month of October 1997 the militants came again to our workshop at 4 p.m. and forced us to do their repairing of Sten guns. We had to close the workshop at 5 p.m. We were doing their work after closing the door at 9 o'clock; militants were sitting besides us. Military forces were patrolling the streets, when they saw the light inside they knocked the door then the militants said don't open the door, then the police got suspicious, and they surrounded the workshop. We were nine people inside the workshop, four of them my workers and four were the militants and myself. There was one window has the opening towards the deep ditch. When we did not open the door, they gave us warning if we didn't open the door they are going to start firing. After that they started firing, the militants also opened the fire; the encounter lasted three hours." —*Attachment to I-589.*

6

14. It is clear that the Petitioner was forced to keep the door closed and to say nothing. He also clearly stated that it was the militants who "opened the fire" and not himself or his other employees. The IJ's suggestion that the record is not clear whether the Petitioner was actively involved or not is a misstatement of the record used to justify his decision: it is much simpler to deny the case on the basis of terrorist association rather than undertake a denial based on adverse credibility–the IJ took the easy way out. The jurisdictional bar at §208(c)(2)(D) effectively rendered his decision inviolate.

15. The final episode or instance used by the IJ and the Board to justify its reasoning is the kidnapping incident. The IJ sarcastically described the Petitioner's travails: "The Court further finds that respondent's testimony regarding the fact that he was forced to follow two individuals, and there is no record that those two individuals were armed, that he was kidnapped at 5 p.m. in a very crowded placed, escorted to his home by train and by bus  and by foot all the way, the Court cannot accept that testimony as plausible. It sounds preposterous that an individual, a Hindu in the position of the respondent, would be forced for several hours and for several days, to follow by public transportation, the terrorists throughout the territory of India. This Court finds that this respondent cooperated, to a certain extent, and did follow those terrorists back to his work shop." *Oral Decision, pg. 13-14.*

16. The IJ left out a crucial detail, as well as abandoned his common sense. The Petitioner was not kidnapped in broad daylight and foisted onto trains and then buses for two days; rather, he was kidnapped and taken to the militants' safe

7

house and there, he was kept for 3-4 days. These 3-4 days of imprisonment preceded the trip to the Petitioner's workshop. "I suddenly ran into them and they said our stuff the ammunition was lying with me and then they forcibly took me to their house." *Tr., pg. 47.* "They kept me locked inside for three or four days." *Id., pg. 48.* The Petitioner was not asked what, if anything transpired during those three to four days.

17. The Petitioner did testify, however, that when he was kidnapped, "[t]hey held me from my arm, he made a gesture of holding his wrist, and he said you speak I'll shoot you." Tr., p. 48-49. Thus, the IJ's statement that there was no record of the militants being armed is belied by the record. His declaration confirms that subsequent to his kidnapping but prior to being forced onto a train and then a bus, he was kept inside for 3-4 days. No doubt this lengthy incarceration was intended to wear the Petitioner down and prepare him for the trip. Clearly though, it is not implausible that after he was isolated for 3-4 days with these terrorists, he did not fight aggressively to escape. His declaration also clarifies that after the train trip to Jammu, he was forced with the terrorists to spend the night in "another person's house at Jammu and in the morning we got a Bus for Srinagar at 5:00 a.m." *Attachment to I-589.* There should be little doubt that all of these incidents were under grave duress by the Petitioner. The mere fact that he knew these men were dangerous and willing to use firepower to enforce their wishes, as they did in October 1997 with the police, would be enough to render compliant the most courageous of us. The IJ absurdly and unrealistically expected the Petitioner to risk his life and that of his family to "stare down"

8

these hardened criminals. These expectations fail to comport with reality, common sense and rational behavior.

18. The IJ in his decision of April 30, 2003 denied the Petitioner all forms of relief and ordered him removed to India. The IJ found the Petitioner was barred from asylum and withholding because "this respondent has engaged in activities assisting and aiding, abetting the terrorist activities knowing all along since 1995 regarding the nature of those activities." *Oral Decision of the Immigration Judge, pg. 14.* The IJ also found with respect to the Petitioner's request for protection under Article 3 of the Convention Against Torture that "the authority [*sic*] in India arrested the respondent as a result of his association or his activities in assisting the terrorists' activities. Therefore, those activities are not covered under the protection of the Convention Against Torture." *Id., pg. 15-16.* Finally, the IJ also denied voluntary departure because "the Court has found that the respondent is deportable under Section 237(a)(4), terrorist activities, this respondent is barred from voluntary departure." *Id., pg. 16.*

19. On March 16, 2004, the Board dismissed the Petitioner's appeal from the decision of the IJ. The Board first stated that the "Immigration Judge properly found material inconsistencies in the respondent's story." *Order,* March 16, 2004. However, "[e]ven if the respondent was credible," the Board continued, "The Immigration Judge properly found that the Petitioner was ineligible for relief because he provided material support to terrorists in violation of section 212(a)(3)(B)(iv) of the Act. Providing repair services for the terrorists' weaponry is doubtless 'material support' under the Act, rendering the respondent ineligible for asylum, withholding of removal, and protection under the Convention

9

Against Torture." *Id.* This decision was challenged in a petition for review with the Ninth Circuit Court of Appeals in a case docketed as 04-71803.

20. On October 27, 2006, the Circuit dismissed in part and denied in part, the Petitioner's petition for review. The Court found that it lacked jurisdiction to review the Petitioner's ineligibility for asylum "because he provided material support to terrorists." *Pathak v. Gonzales,* 203 Fed. Appx. 829 (9th Cir. 2006) (04-71803) (unpublished disposition). Further, the Court found "that Pathak is ineligible for both forms of relief because he materially supported terrorists. By Pathak's own admission, he provided assistance to known terrorists by permitting them to use his family's workshop to repair their weapons, by repairing their weapons himself, and by joining them on a lengthy cross-country trip to help them recover weapons they claimed to have hidden in his family's workshop. This conduct clearly constitutes material support of terrorism…The BIA properly held that Pathak's material support of terrorists in his native India rendered him ineligible for both statutory withholding of removal as well as withholding of removal under CAT." *Id.* The mandate issued on February 2, 2007.

21. On February 26, 2007, Secretary of Homeland Security, Michael Chertoff, following consultations with the Secretary of State and the Attorney General, exercised his authority pursuant to §212(d)(3)(B)(i) of the INA and concluded that "subsection 212(a)(3)(B)(iv)(VI)[1] of the Act shall not apply with respect to

---

[1] Defining "engage in terrorist activity" as meaning "to commit an act that the actor knows, or reasonably should know, affords material support, including a safe house, transportation, communications, funds, transfer of funds or other material financial benefit, false documentation or identification, weapons (including chemical, biological, or radiological

10

material support provided under duress to a terrorist organization as described in subsection 212(a)(3)(B)(vi)(III)[2] if warranted by the totality of the circumstances." *Exercise of Authority Under Sec. 212(d)(3)(B)(i) of the Immigration and Nationality Act,* 72 Fed. Reg. 9958, March 6, 2007, effective February 26, 2007. The Secretary held that the exercise of authority as a matter of discretion "shall apply to an alien who satisfies the agency that he: (a) Is seeking a benefit or protection under the Act and has been determined to be otherwise eligible for the benefit or protection; (b) Has undergone and passed relevant background and security checks; (c) Has fully disclosed, in all relevant applications and interviews with U.S. Government representatives and agents, the nature and circumstances of each provision of such material support; and (d) Poses no danger to the safety and security of the United States." *Id.*

22. The Secretary further elucidated, "When determining whether the material support was provided under duress, the following factors, among others, may be considered: whether the applicant reasonably could have avoided, or took steps to avoid, providing material support, the severity and type of harm inflicted or threatened, to whom the harm was directed, and, in cases of threats alone, the perceived imminence of the harm threatened and the perceived likelihood that

---

weapons), explosives, or training—(aa) for the commission of a terrorist activity; (bb) to any individual who the actor knows, or reasonably should know, has committed or plans to commit a terrorist activity; (cc) to a terrorist organization described in subclause (I) or (II of clause (vi) or to any member of such an organization; or (dd) to a terrorist organization described in clause (vi)(III), or to any member of such an organization, unless the actor can demonstrate by clear and convincing evidence that the actor did not know, and should not reasonably have known, that the organization was a terrorist organization."

[2] "[A] group of two or more individuals, whether organized or not, which engages in, or has a subgroup which engages in, the activities described in subclauses (I) through (VI) of clause (iv)."

11

the harm would be inflicted." *Id.* In addition to these duress-related factors, the agency would consider, among others: "the amount, type and frequency of material support provided, the nature of the activities committed by the terrorist organization, the alien's awareness of those activities, the length of time since material support was provided, the alien's conduct since that time, and any other relevant factor." *Id.*

23. The Secretary announced that "[i]mplementation of this determination will be made by U.S. Citizenship and Immigration Services (USCIS), in consultation with U.S. Immigration and Customs Enforcement (ICE)." *Id.* Thus, the publication in the federal register was only the first step in setting up the agency to review and make these determinations. This announcement only applied to so-called, "Tier III" organizations and did not apply to §212(a)(3)(B)(vi)(I) ("Tier I" entities designated under section 219) or §212(a)(3)(B)(vi)(II) ("Tier II" entities designated upon publication in the Federal Register by the Secretary of State in consultation with or upon the request of the Attorney General or Secretary of Homeland Security).

24. Significantly, the announcement explicitly stated that it did "not affect the continued applicability of any other security-related ground of inadmissibility in section 212 of the Act, including subsections 212(a)(3)(B)(iv)(I) through (V), which continue to render inadmissible those who have engaged in terrorist activity as enumerated by those subsections." *Id.* Subsequently, on May 8, 2007, the Secretary expanded his exercise of authority to conclude that "subsection 212(a)(3)(B)(iv)(VI) of the Act shall not apply with respect to material support provided under duress to a terrorist organization as described in subsection

12

212(a)(3)(B)(vi)(I) (Tier I) or subsection 212(a)(3)(B)(vi)(II) (Tier II) if warranted by the totality of the circumstances." 72 Fed. Reg. 26138, May 8, 2007, effective April 27, 2007.

25. It was not until May 24, 2007, that the USCIS issued an Interoffice Memorandum establishing procedures for the processing of these discretionary exemptions. *See* Jonathan Scharfen, Deputy Director, *Interoffice Memorandum to Associate Directors, Chief, Office of Administrative Appeals and Chief Counsel,* "Processing the Discretionary Exemption to the Inadmissibility Ground for Providing Material Support to Certain Terrorist Organizations," May 24, 2007. The stated purpose of the memorandum was to "outline[ ] instructions for adjudicating those applications for immigration benefits filed with USCIS where an applicant is found to be inadmissible or otherwise barred from an immigration benefit for having provided material support to a terrorist organization." *Id.*

26. According to the Scharfen Memorandum, the threshold requirements for consideration are that the alien otherwise: establish eligibility for the immigration benefit or protection sought; undergo and pass all background/security checks; fully disclose the "nature and circumstances of each provision of material support: in all applications and interviews with the Government; and that he or she pose no danger to the safety and security of the United States.

27. For the "duress exemption" for Tier III undesignated terrorist organizations, a list of "non-exhaustive" factors must be considered. These factors include:

- "Whether the applicant reasonably could have avoided or took steps to avoid, providing material support;
- The severity and type of harm inflicted or threatened;

13

- To whom the harm or threat of harm was directed (e.g., the applicant, the applicant's family, the applicant's community, etc.);
- The perceived imminence of the harm threatened;
- The perceived likelihood that the threatened harm would be inflicted (e.g., based on instances of past harm to the applicant, to the applicant's family, to the applicant's community, and the manner in which harm was threatened, etc.); and
- Any other relevant factor regarding the circumstances under which the applicant felt compelled to provide the material support."

28. The memorandum then instructs that if it is determined that material support was provided under duress, the adjudicator must "consider whether the totality of circumstances justifies the exercise of authority as a matter of discretion." *Id.* Factors to be considered in the exercise of discretion include: the amount and type of material support; frequency of the support provided; nature of the terrorist activities committed by the terrorist/terrorist organization; the applicant's awareness of the terrorist activities; the length of time that has passed since the applicant provided the material support; the applicant's conduct since the time that he or she provided support; and any other relevant factor.

29. Based on these developments, the Petitioner filed a motion to reopen on July 21, 2007. The Petitioner has clearly met all threshold requirements for consideration of the exemption. He is clearly "otherwise" eligible for asylum, withholding of removal and protection under the Convention Against Torture. The sole basis for the decisions of the IJ, the Board and the Ninth Circuit pertained to the finding that the Petitioner provided "material support" for terrorists. This provision was used to bar the Petitioner from asylum and withholding by the IJ and the Board. Although the IJ questioned the Petitioner's credibility, the overarching basis for the denial of the claim was the association with Muslim militants. Significantly, the Board found that even if the Petitioner were deemed

14

credible, he was still "properly found...ineligible for relief because he provided material support to terrorists in violation of section 212(a)(3)(B)(iv)...Providing repair services for the terrorists' weaponry is doubtless 'material support' under the Act, rendering the respondent ineligible for asylum, withholding of removal, and protection under the Convention Against Torture." *Order,* March 16, 2004. Even more significantly, the Ninth Circuit's decision focused solely on the terrorism-related basis for the denial and ineligibility of relief: the Circuit's decision notes absolutely nothing about credibility because that was never an explicit basis for the denial.

30. The Petitioner has also been fingerprinted in connection with his asylum application while in proceedings and has passed all background and security checks. As well, he has fully disclosed his involvement with the militants in his application for asylum and in his interview with the Asylum Office and at his hearing before the Immigration Judge. The Petitioner has never attempted to hide his involvement with them, as it was the crux of his claim to asylum. Finally, he is happily married and poses no danger to the safety and security of anybody in his community or the United States.

31. There appears to be little doubt that the Petitioner has provided "material support" to militants, which would qualify as a non-designated terrorist organization of the Tier III variety under INA §212(a)(3)(B)(vi)(III). This was the conclusion of the Immigration Judge, the Board, and the Ninth Circuit Court of Appeals. However, as elucidated above, all of the provisions of material support were made under grave duress, fear of reprisal and fear for the safety and lives of himself and his family. Mr. Pathak has been in the custody of the

15

Respondents since August 3, 2007. However, the Respondent(s) have been able to remove the Petitioner since February 2, 2007, when the mandate issued on his case.

## THE PARTIES

32. Respondent Edward C. Flores is the Chief of Correction for the Santa Clara County Department of Correction. As the administrative head of the Department of Correction, he is the Petitioner's "immediate custodian" and thus a proper Respondent to this proceeding. *Rumsfeld v. Padilla,* 542 U.S. 426, 434-42, 124 S.Ct. 2711 (2004).

33. Respondent Nancy Alcantar is the Field Office Director for the San Francisco Detention and Removal Office, Immigration and Customs Enforcement. She is directly charged with the responsibility of determining whether the Petitioner will be detained in the custody of the Department or released pending the conclusion of judicial proceedings.

34. Respondent, Michael Chertoff, is the Secretary for the Department of Homeland Security. He is charged with the administration and enforcement of the Immigration and Nationality Act and all other laws relating to the immigration and naturalization of aliens, provided that the Attorney General's determinations and rulings are controlling. Given this authority, he is empowered to carry out any administrative order of removal entered against the Petitioner. *See* 8 U.S.C. §1103(a)(1).

35. Respondent Alberto R. Gonzales is the Attorney General of the United States and is responsible for the administration of the immigration laws under 8 U.S.C. §1103 and the implementation and enforcement of the Immigration and

16

Nationality Act. As such, he has ultimate legal control and authority over Mahesh Kumar Pathak.

## EXHAUSTION OF REMEDIES

36. The Petitioner has exhausted his administrative remedies to the extent required by law, and his only remedy is by way of this judicial action. He has appealed his case to the highest administrative level, the Board of Immigration Appeals and his case is now pending at the Ninth Circuit Court of Appeals pursuant to the authority found at 8 U.S.C. §1252.

## THE POST–ORDER REGULATORY DETENTION SCHEME

37. INA §241(a)(1)(A), 8 U.S.C. §1231(a)(1)(A) states "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." This so–called "removal period begins on the latest of the following" three circumstances: "The date the order of removal becomes administratively final"; "If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order"; or "If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."    8 U.S.C. §1231(a)(1)(B)(i)–(iii). *See also* 8 C.F.R. §241.4(g)(1)(i)(A)–(C).

38. As noted above, the Petitioner is apparently being reviewed and assessed under the post-order regulatory scheme, i.e., 8 U.S.C. §1231(a), INA §241(a), as well as the pre-removal order statute, INA §236. The decision continuing his detention cites both the pre– and post–order detention statute. Again, if he is being assessed under §236, the pre-removal order statute, he should be given an individualized bond hearing or released, as he has no criminal history to justify

his detention. On the other hand, if he is being assessed under the post-order statute, his continued detention is unlawful because the court has "order[ed] a stay of the removal of the alien" and the removal period therefore has not begun. 8 U.S.C. §1231(a)(1)(B)(ii). *See, e.g., Kothandaraghupathy v. Department of Homeland Security,* 396 F.Supp. 2d 1104, 1107; 2005 U.S. Dist. LEXIS 27043 (U.S.D.C. AZ 2005) ("Although Petitioner is subject to an administratively final order of removal, the 'removal period' has not yet begun because his removal order is currently on appeal to the Ninth Circuit and because the Ninth Circuit has granted Petitioner a stay of his removal. The 'removal period' will not begin for Petitioner until 'the date of [Ninth Circuit's] final order.'"). *See also Sofowora v. Gonzales,* 2006 U.S. Dist. LEXIS 60703 (E.D. CA 2006) (dismissing petition "for lack of ripeness" because "due to the Ninth Circuit's stay of removal, the removal period will not commence until mandate is issued and the stay is lifted");

39. The District Court in *Kothandaraghupathy* concluded "[a]ccordingly," that the "Petitioner's current detention is pursuant to the pre–removal order detention statute, 8 U.S.C. §1226, rather than the post–removal order detention statute, 8 U.S.C. §1231." *Id.* Similarly, in *Singh v. Crawford, supra,* the Court concluded that the Petitioner fell under the pre-removal order detention statute, i.e., 8 U.S.C. §1226, rather than the post-order detention statute, 8 U.S.C. §1231. For that reason, the Court "recognize[d], however, that Petitioner may have some other basis for challenging the legality of his current detention. Accordingly, the petition will be dismissed with leave to amend to allow Petitioner to present a cognizable claim for habeas corpus relief." *Id.*

18

## ADDITIONAL CONSIDERATIONS

40. The Petitioner's wife, Diane Pathak, avers in a declaration that her husband's mental and physical health is deteriorating.    Mr. Pathak is "diabetic and vegetarian" and Santa Clara does not provide a nutritious and proper diet for someone with his condition. She avers that she last saw him on September 4, 2007 and he "had a string tied around his waist to hold up his pants. He also had severe bags under his eyes, and his skin was discolored, a yellowish color...He suffers from extreme headaches all the time and is not sleeping." *Declaration of Diane Evans Pathak,* September 6, 2007. The Court should take these distressing facts into consideration when ruling upon this petition in light of recent deaths of aliens in immigration custody.

## EQUAL ACCESS TO JUSTICE ACT

41. If he prevails, Petitioner will seek attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), *as amended,* 5 U.S.C. §504 and 28 U.S.C. §2412.

## CLAIMS FOR RELIEF

### COUNT ONE
### STATUTORY VIOLATION

42. Petitioner re-alleges and incorporates by reference paragraphs 1 through 41 above.

43. His continued detention beyond a "reasonable time" violates 8 U.S.C. §1231, as interpreted by the Supreme Court in *Zadvydas*. "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing. And for detention to remain

reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Zadvydas,* at 701. "*Zadvydas* and *Clark* [*v. Martinez,* 543 U.S. 371 (2005)] used the six-month period as the touchstone of reasonableness." *Nadarajah v. Gonzales,* 443 F.3d 1069, 1080 (9th Cir. 2006). The agency has not at all alleged that there is a "significant likelihood of removal [of the Petitioner] in the reasonably foreseeable future." "In light of the[ ] constitutional doubts [of potentially indefinite detention], the Court construed section 1231(a)(6) as authorizing the AG to hold an alien for no more than six months, unless the government can show a reasonable probability that it can remove him. If there is no such probability, the alien may bring a habeas petition after the six-month period, and the court must order him released, subject to conditions to be set by the AG." *Thai v. Ashcroft,* 389 F.3d 967, 968 (9th Cir. 2004).

## COUNT TWO
### SUBSTANTIVE DUE PROCESS VIOLATION

44. Petitioner re-alleges and incorporates by reference paragraphs 1 through 43 above.

45. Mr. Pathak's continued detention violates his right to substantive due process by depriving him of his core liberty interest to be free from bodily restraint. The Fifth Amendment's Due Process Clause requires that the deprivation of the Petitioner's liberty be narrowly tailored to serve a compelling government interest. While the Respondents would have a compelling government interest in detaining the Petitioner in order to effect his deportation, that interest wanes as time passes and the government fails to effect the Petitioner's removal.

20

"*Zadvydas* thus interpreted 8 U.S.C. §1231 to allow continued detention only for a period reasonably necessary to secure the alien's removal, a period of six months, because any other reading would go beyond the government's articulated interest, to effect the alien's removal. In short, applying the Supreme Court's statutory analysis to the instant case, we conclude that the general immigration detention statutes do not authorize the Attorney General to incarcerate detainees for an indefinite period. Rather, consistent with the Supreme Court's approach in Zadvydas, we conclude that the statutes at issue permit detention only while removal remains reasonably foreseeable. Further, consistent with Zadvydas, we conclude that after a presumptively reasonable six-month detention, 'once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing.'" *Nadarajah v. Gonzales*, 443 F.3d 1069, 1078 (9th Cir. 2006), *citing Zadvydas,* 533 U.S. at 701.

46. Freedom from bodily restraint has always been at the core of the liberty protected by the Fifth Amendment's Due Process Clause. *See also Xi v. U.S. INS*, 298 F.3d 832 (9th Cir. 2002) (extending the Supreme Court's ruling to include inadmissible aliens). "Liberty from bodily restraint always has been recognized as the core of the liberty protected by the Due Process Clause from arbitrary governmental action." *See Greenholtz v. Nebraska Penal Inmates*, 442 U.S. 1, 18 (1979) (POWELL, J., concurring in part and dissenting in part). *See also Youngberg v. Romeo,* 457 U.S. 307, 316 (1982) ("This interest [in freedom from bodily restraint] survives criminal conviction and incarceration. Similarly, it must also survive involuntary commitment.").

21

## PRAYER FOR RELIEF

WHEREFORE, Petitioner prays that this Court grant the following relief:

1)    Assume jurisdiction over this matter;

2)    Issue a writ of habeas corpus directing the Respondents to immediately release the Petitioner from custody or schedule the Petitioner for an individualized custody redetermination hearing;

3)    Order Respondents to refrain from transferring the Petitioner out of the jurisdiction during the pendency of these proceedings and while the Petitioner remains in Respondent's custody;

4)    Award to Petitioner reasonable costs and attorney's fees; and

5)    Grant any other and further relief that this Court deems just and proper.

Respectfully submitted this __12__ day of _____ 2007.


MARTIN RESENDEZ GUAJARDO
Counsel for the Petitioner
P.O. Box 2087
San Francisco, California 94126
T: (415) 398–3852
F: (415) 296–8730

22

# INDEX OF EXHIBITS

| Exhibit | Description |
|---------|-------------|
| A | Declaration of Petitioner's U.S. Citizen Spouse, Diane Evans Pathak, September 6, 2007; |
| B | Ninth Circuit Decision in Petitioner's Case, October 27, 2006 and PACER Docket Sheet; |
| C | Board Decision, March 16, 2004; |
| D | Pending Immediate Relative Visa Petition Filed by Spouse; |
| E | Oral Decision of the Immigration Judge, April 30, 2003; |
| F | Application For Asylum, I-589, and Petitioner's Affidavit; |
| G | Receipt Notice and File Stamped Cover Page of Pending Motion To Reopen, July 23, 2007. |



I, <u>DIANE EVANS PATHAK</u>, declare the following under penalty of perjury:

1.  My name is Diane Evans Pathak. I am a U.S. citizen, born in Homer, Louisiana. I am married to Mahesh Kumar Pathak, who is presently in the custody of Department of Homeland Security, Immigration and Customs Enforcement in Santa Clara, California.

2.  Mahesh Pathak, my husband, was arrested by Immigration and Customs Enforcement on August 3, 2007. I have visited my husband on numerous occasions at the jail and am gravely concerned about his condition.

3.  To begin, my husband is diabetic and vegetarian. The jail has not provided him a proper nutritious diet and as a result, he has lost a tremendous amount of weight since he was arrested. The last time I saw him on Tuesday, September 4, 2007, he had a string tied around his waist to hold up his pants. He also had severe bags under his eyes, and his skin was discolored, a yellowish color. He often cries, although he tries to hide this from me, as he does not wish for me to worry more over his mental condition.

4.  My husband is very distraught and his psychological condition is deteriorating. He suffers from severe headaches all the time and is not sleeping. As his wife, I suffer along with him and feel his pains as if they were my own. He is having difficulties with his eyes and is unable to read. I am extremely worried about my husband and find myself praying constantly over his health and his medical and psychological condition. I see that his spirit is breaking as his health deteriorates. I have faith that we will come out of this and persevere as husband and wife but I am frightened.

5.  My husband is not receiving proper medical care or a proper diet for a religious vegetarian, such as my husband. I pray that the government will release him before his health deteriorates beyond repair. Please help me, a U.S. citizen, and my husband.

I, DIANE EVANS PATHAK, DECLARE THAT THE FOREGOING IS TRUE AND CORRECT AND WAS EXECUTED THIS _06_ DAY OF SEPTEMBER 2007.

DIANE EVANS PATHAK

1

B

# Westlaw.

203 Fed.Appx. 829                                                          Page 1
203 Fed.Appx. 829, 2006 WL 3053495 (C.A.9)

**(Cite as: 203 Fed.Appx. 829)**

# C

Pathak v. Gonzales
C.A.9,2006.
This case was not selected for publication in the
Federal Reporter.Please use FIND to look at the
applicable circuit court rule before citing this
opinion. (FIND CTA9 Rule 36-3.)

United States Court of Appeals,Ninth Circuit.
Mahesh Kumar PATHAK, Petitioner,
v.
Alberto R. GONZALES, Attorney General,
Respondent.
**No. 04-71803**.

Submitted Oct. 17, 2006.<sup>FN*</sup>

FN* This panel unanimously finds this case
suitable for decision without oral argument.
*See* Fed. R.App. P. 34(a)(2).
Filed Oct. 27, 2006.

**Background:** Alien, a native of India, petitioned for
review of an order of the Board of Immigration
Appeals (BIA) which affirmed an IJ's denial of
asylum, withholding of removal, and relief under the
Convention Against Torture and Other Cruel,
Inhuman or Degrading Treatment or Punishment
(CAT).

**Holdings:** The Court of Appeals held that:

(1) Court of Appeals lacked jurisdiction to review
determination by BIA that alien was ineligible for
asylum because he provided material support to
terrorists, and

(2) alien materially supported terrorism, such that he
was ineligible for withholding of removal or relief
under the CAT.

Petition dismissed in part and denied in part.
West Headnotes
**[1] Aliens, Immigration, and Citizenship 24**


**600**

24 Aliens, Immigration, and Citizenship
  24VII Asylum, Refugees, and Withholding of
Removal
    24VII(G) Judicial Review or Intervention
      24k600 k. Jurisdiction and Venue. Most
Cited Cases
Court of Appeals lacked jurisdiction to review
determination by Board of Immigration Appeals
(BIA) that alien was ineligible for asylum because he
provided material support to terrorists. Immigration
and Nationality Act, §§ 208(b)(2)(A)(v),
212(a)(3)(B)(i)(I), 8 U.S.C.A. §§ 1158(b)(2)(A)(v),
1182(a)(3)(B)(i)(I).

**[2] Aliens, Immigration, and Citizenship 24**


**510(2)**

24 Aliens, Immigration, and Citizenship
  24VII Asylum, Refugees, and Withholding of
Removal
    24VII(C) Eligibility; Refugee Status
      24k505 Ineligible Aliens
        24k510 Security and Related Grounds
          24k510(2) k. Terrorist Activity. Most
Cited Cases
Alien, a native of India who, by his own admission,
provided assistance to known terrorists by permitting
them to use his family's workshop to repair their
weapons, by repairing their weapons himself, and by
joining them on lengthy cross-country trip to help
them recover weapons they claimed to have hidden in
his family's workshop materially supported terrorism,
such that he was ineligible for withholding of
removal or relief under the Convention Against
Torture and Other Cruel, Inhuman or Degrading
Treatment or Punishment (CAT). Immigration and
Nationality Act, § 212(a)(3)(B)(iv)(VI), 8 U.S.C.A. §
1182(a)(3)(B)(iv)(VI).

*830 Mahesh Kumar Pathak, Berkeley, CA, pro se.
Western Region Immigration & Naturalization

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Service, Laguna Niguel, CA, Norah Ascoli Schwarz, Esq., U.S. Department of Justice Civil Div./Office of Immigration Lit., Washington, DC, for Respondent.

On Petition for Review of an Order of the Board of Immigration Appeals, Agency No. A78-659-983.

Before: KLEINFELD and BYBEE, Circuit Judges, and WHALEY,[FN**] District Judge.

> FN** The Honorable Robert H. Whaley, United States District Judge for the Eastern District of Washington, sitting by designation.

MEMORANDUM [FN***]

> FN*** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36-3.

**1 [1][2] The facts are known to the parties, and we do not repeat them here. This court lacks jurisdiction to review the Board of Immigration Appeal's (" BIA" ) determination that Pathak is ineligible for asylum because he provided material support to terrorists. 8 U.S.C. § 1158(b)(2)(A)(v); 8 U.S.C. § 1182(a)(3)(B)(i)(I); see Bellout v. Ashcroft, 363 F.3d 975, 977 (9th Cir.2004). Although we do have jurisdiction to review the BIA's decision in the context of Pathak's request for withholding of removal and Convention Against Torture (" CAT" ) relief, we find that substantial evidence supports the BIA's determination that Pathak is ineligible for both forms of relief because he materially supported terrorists. By Pathak's own admission, he provided assistance to known terrorists by permitting them to use his family's workshop to repair their weapons, by repairing their weapons himself, and by joining them on a lengthy cross-country trip to help them recover weapons they claimed to have hidden in his family's workshop. This conduct clearly constitutes material support of terrorism. See 8 U.S.C. § 1182(a)(3)(B)(iv)(VI). The BIA properly held that Pathak's material support of terrorists in his native India rendered him ineligible for both statutory withholding of removal as well as withholding of removal under CAT. See Bellout, 363 F.3d at 978-79.

Accordingly, the petition for review is **DISMISSED** in part and **DENIED** in part.

C.A.9,2006.
Pathak v. Gonzales
203 Fed.Appx. 829, 2006 WL 3053495 (C.A.9)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.





# General Docket
## US Court of Appeals for the Ninth Circuit

Court of Appeals Docket #: 04-71803                    Filed: 4/14/04
Nsuit:    0
Pathak, et al v. Gonzales
Appeal from: Immigration and Naturalization Service

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Case type information:
     1) agency
     2) review
     3)
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Lower court information:

     District: 0971-3 : A78-659-983
     Date Filed: 4/14/04
     Date order/judgment: **/**/**
     Date NOA filed: **/**/**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Fee status: paid

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Prior cases:
   None
Current cases:
   None

Docket as of February 14, 2007 11:20 pm              Page 1

04-71803 Pathak, et al v. Gonzales

MAHESH KUMAR PATHAK              Hardeep Singh Rai
     Petitioner                 FAX 415/693-9415
                                415/693-9131
                                Suite 1000
                                [COR LD NTC ret]
                                Tsz-Hai Huang
                                FAX
                                415/693-9131
                                Ste 1000
                                [COR LD NTC ret]
                                George T. Heridis, Esq.
                                FAX 415/693-9135
                                415/693-9131
                                Ste. 1000
                                [COR LD NTC ret]
                                RAI & ASSOCIATES, PC
                                220 Montgomery St.
                                San Francisco, CA 94104

     v.

ALBERTO R. GONZALES, Attorney   Ronald E. LeFevre, Chief
General                         Counsel
     Respondent                 [COR LD NTC gov]
                                OFFICE OF THE DISTRICT COUNSEL

Department of Homeland Security
P.O. Box 26449
San Francisco, CA 94126-6449

Michael P. Lindemann, Esq.
FAX 202/616-9777
202/307-0871
[COR LD NTC gov]
Ethan B. Kanter, Esq.
FAX
202/616-9123
[COR LD NTC gov]
DOJ - U.S. DEPARTMENT OF
JUSTICE
Civil Div./Office of
Immigration Lit.
P.O. Box 878, Benjamin Franklin
Station
1331 Pennsylvania Ave., NW
Washington, DC 20044

Docket as of February 14, 2007 11:20 pm          Page 2

---

04-71803 Pathak, et al v. Gonzales

MAHESH KUMAR PATHAK

          Petitioner

   v.

ALBERTO R. GONZALES, Attorney General

          Respondent

Docket as of February 14, 2007 11:20 pm          Page 3

---

04-71803 Pathak, et al v. Gonzales

4/14/04     FILED INS PETITION FOR REVIEW.  DOCKETED CAUSE AND ENTERED
            APPEARANCES OF COUNSEL. Pursuant to G.O. 6.4(c)(1)(3), the
            schedule is set as follows: Cert. Admin. Record and
            Response to Stay Motion due 7/13/04.  [MOATT]  [04-71803]
            (je)

4/14/04     Filed Petitioner Mahesh Kumar Pathak's motion to stay
            deportation (see schedule above) [04-71803] served on
            4/14/04 [5033044] [04-71803] (je)

7/13/04     Filed notice of appearance of Luis E. Perez and Norah
            Ascoli Schwarz  (Withdrew as counsel: attorney OIL for John
            Ashcroft)  [04-71803] (dv)

7/13/04     Filed John Ashcroft motion to extend time to file the
            administrative record on appeal and response to motion for
            stay until 09/10/04; served on 07/12/04. (MOATT) [04-71803]
            [5117167] (dv)

7/23/04     Filed order MOATT (SC) Respondent's motion for an extension
            of time to file a response to the motion for stay of

|          | removal and the certified administrative record is granted.<br>[5117167-1] The response and record are now due 9/10/04.<br>[04-71803] (ba) |
|----------|---|
| 9/10/04  | Filed respondent's motion to extend time to file response<br>to motion for stay of removal and administrative record on<br>appeal until 11/9/04; served on 9/9/04 to (MOATT). (jr) |
| 9/20/04  | Filed order MOATT (Deputy Clerk: ckp) Resp's mtn for an ext<br>of time to file a response to the mtn for stay of removal<br>and the CAR is GRANTED. The response and the CAR are now<br>due 11/9/04.  [04-71803] (rc) |
| 11/9/04  | Filed respondent's motion to extend time to file the<br>administrative record on appeal and non-opposition to<br>request for stay of removal until 1/7/05; served on 11/8/04<br>to (MOATT). (jr) |
| 11/18/04 | Filed order MOATT (MM) Resp has filed a stmt of<br>non-opposition to the mtn to stay removal pending review.<br>Pursuant to 9th Cir. G.O. 6.4(c), the temporary stay of<br>removal continues in effect until issuance of the mandate,<br>or further order of the ct. Also see Desta v Ashcroft. The<br>CAR is due 1/7/05. The opening brief is due 2/16/05; the<br>answering brief is due 3/18/05; and the optional reply<br>brief is due w/i 14 days after service of the answering<br>brief.  [04-71803] (rc) |
| 11/19/04 | FILED 4 CERTIFIED COPIES OF ADMINISTRATIVE RECORD ON APPEAL<br>[04-71803] [04-71803] (jas) |

Docket as of February 14, 2007 11:20 pm          Page 4

---

04-71803 Pathak, et al v. Gonzales

| 2/11/05 | Filed Mtn of Petr and Order (Dep Clk: PROMO/cag) Petr's mtn<br>for an ext. of time in which to file the opening brf is<br>GRANTED.  The opening brf is due 3/23/05.  The ans brf is<br>due 4/22/05, and the optional reply brf is due 14 days<br>after svc of the ans brf.  (Motion recvd 2/8/05) [04-71803]<br>(af) |
|---------|---|
| 3/16/05 | Filed petitioner's ntc of appearance of Hardeep S. Rai and<br>George T. Heridis as csl, motion to suppl record and extend<br>time to file opening brf; served on 3/16/05 to (PRO MO).<br>[04-71803] (jr) |
| 3/23/05 | Filed order PROMO (cag) The Clerk shall enter the<br>appearance of Rai & Assoc on behalf of petitioner. On or<br>before 4/13/05 resp shall file a suppl admin record which<br>includes the documents identified by pet's motion. The<br>briefing schedule is reset as follows: opening brief<br>5/23/05, answering brief 6/22/05, reply brief is due 14<br>days from service.  [04-71803] (ca) |
| 4/13/05 | Filed Respondent's motion for extension of time to file the<br>certified administrative record (5/13/05); served on<br>4/12/05 [5399590] (PROMO) (ba) |
| 4/18/05 | Filed order (Deputy Clerk: cag) Respondent's motion for an<br>extension of time to file the CAR is granted. The CAR is<br>due 05/13/05. The aob is due 06/22/05. The answering brief |

is due 07/22/05. The optional reply brief is due 14 days
after service. [5399590-1]  [04-71803] (dv)

5/25/05          FILED 4 CERTIFIED COPIES OF ADMINISTRATIVE RECORD ON APPEAL
                 [04-71803] [04-71803] (jas)

5/25/05          Filed respondent's motion for leave to file late CAR;
                 served on 5/23/05 to (PRO MO). (jr)

6/2/05           Filed order (Deputy Clerk: lb/PROMO) Resp's motion for an
                 ext of time to file the CAR record is granted. The prev'd
                 rec'd recaord has been filed. The opening brief is due Jul.
                 11, 2005.  The answering brief is due Aug. 10, 2005.  The
                 optional reply brief is due 14 days after service of the
                 answering brief.  [04-71803] (vt)

7/11/05          Filed original and 15 copies of petitioner's opening brief
                 (Informal: no) 25 pages; served on 7/11/05  [04-71803] (az)

8/3/05           Filed resp's Gonzales unopposed mtn for an ext of time
                 within which to file resp's brf; served on 8/2/05. (PROMO)
                 [04-71803] [5522143] (ea)

8/3/05            Filed notice of appearance of Douglas E. Ginsburg and
                 Ethan B. Kanter as counsel of record for Respondent
                 Alberto R. Gonzales  [04-71803] (megk)

Docket as of February 14, 2007 11:20 pm                Page 5

04-71803 Pathak, et al v. Gonzales

8/9/05           Filed order (Deputy Clerk: cag/PROMO) Resp's mtn for an ext
                 of time in which to file the answering brief is granted.
                 The answering brief is due 10/11/05. The optnl reply brief
                 is due 14 days after srvc of the answering brief.
                 [04-71803] (az)

10/25/05         Filed notice of appearance of Michael P. Lindemann
                 (Withdrew as counsel: Ethan B. Kanter, Douglas E. Ginsburg,
                 Norah Ascoli Schwarz, and Luis E. Perez for Alberto
                 Gonzales)  [04-71803] (az)

10/25/05         Filed original and 16 copies respondent Alberto R.
                 Gonzales's 38 page brief; served on 10/11/05  [04-71803] (az)

12/30/05         Calendar check performed [04-71803] (th)

7/25/06          Calendar materials being prepared. [04-71803]  [04-71803]
                 (mw)

7/31/06          CALENDARED: San Francisco October 17, 2006 9:00 am Courtroom
                 4 ** TIME CHANGED TO 1:30 PM **  [04-71803] (mw)

10/10/06         Filed Order (Andrew J. KLEINFELD, Jay S. BYBEE, Robert H.
                 Whaley): The Ct is of the unanimous opinion that the facts
                 and legal arguments are adequately presented in the brf and
                 record and the decisional process would not be
                 significantly aided by oral argument. Therefore, this
                 matter is ordered submitted on the brfs and record w/out
                 oral argument on Tuesday, 10/17/06, in San Francisco, CA.
                 FRAP 34(a)(2).  [04-71803] (se)

| 10/17/06 | SUBMITTED ON THE BRIEFS TO: Andrew J. KLEINFELD, Jay S. BYBEE, Robert H. Whaley. [04-71803] (je) |
|---|---|
| 10/27/06 | FILED MEMORANDUM DISPOSITION: Accordingly, the petition for review is DISMISSED in part and DENIED in part. (Terminated on the Merits after Submission Without Oral Hearing; Dismissed in part and Denied in part; Written, Unsigned, Unpublished. Andrew J. KLEINFELD, Jay S. BYBEE, Robert H. Whaley) FILED AND ENTERED JUDGMENT. [04-71803] (se) |
| 12/5/06 | Filed orig & 5 copies Petitioner Mahesh Kumar Pathak petition for rehearing in 7 pages; served on 12/5/06. (FedEx PANEL) [04-71803] (se) |
| 1/25/07 | Filed order (Andrew J. KLEINFELD, Jay S. BYBEE, and Robert H. WHALEY): The panel judges have voted to deny the Petitioner's petition for rehearing. Petitioner's petition for rehearing, filed December 4, 2006, is DENIED. [04-71803] (hc) |
| 2/2/07 | MANDATE ISSUED [04-71803] (gail) |

Docket as of February 14, 2007 11:20 pm                    Page 6

---

| PACER Service Center | | | |
|---|---|---|---|
| Transaction Receipt | | | |
| 09/10/2007 15:05:00 | | | |
| PACER Login: | mr0487 | Client Code: | |
| Description: | dkt report | Case Number: | 04-71803 |
| Billable Pages: | 6 | Cost: | 0.48 |

C



Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5201 Leesburg Pike, Suite 1300*
*Falls Church, Virginia 22041*

Sylva, Earle A. , Esq.                     **Office of the District Counsel/SFR**
**220 Montgomery Street**                  **P.O. Box 26449**
**Suite 1000**                             **San Francisco, CA 94126-6449**
**San Francisco, CA 94104-0000**

**Name: PATHAK, MAHESH KUMAR**            A78-659-983

**Date of this notice: 03/16/2004**

Enclosed is a copy of the Board's decision and order in the above-referenced case.

Sincerely,

Frank Krider
Acting Chief Clerk

Enclosure

Received
Department of Justice

Panel Members:
FILPPU, LAURI S.                  MAR 2 6 2004

Executive Office for Immigration Review
Immigration Court
San Francisco, California

**U.S. Department of Justice**
Executive Office for Immigration Review

Falls Church, Virginia 22041

File:   A78-659-983 - SAN FRANCISCO

Date:

**MAR 1 6 2004**

In re:   PATHAK, MAHESH KUMAR

IN REMOVAL PROCEEDINGS

APPEAL

ON BEHALF OF RESPONDENT: Sylva, Earle A. , Esq.

ON BEHALF OF DHS: Leslie J. Ungerman, Deputy Chief Counsel

ORDER:

PER CURIAM. The respondent has appealed from the Immigration Judge's decision dated April 30, 2003. The Immigration Judge properly found material inconsistences in the respondent's story. First, the respondent contradicted himself in testifying that he and his father were unaware until January 1997 that Muslims working in the father's workshop were militants (Tr. at 42-43). His written application for asylum clearly states that the respondent "came to know" in 1995 that the workers were militants (Exh. 2A). Furthermore, the respondent's submission of pages from his Indian passport (Exh. 5) is totally at odds with his story that the passport was confiscated and destroyed by a travel agent in Belarus during his trip to the United States (Tr. at 17, 31-32). It is also implausible, as the Immigration Judge recognized, that the respondent would be forced to travel with the militants through India, on several types of public transportation, so that the respondent could open up his old workshop and allow the militants to retrive their stash of ammunition (Tr. at 47-50). We do not disagree with the Immigration Judge's observation that because these terrorists were apparently unarmed, it is much more likely that at least some part of this long trip was voluntarily undertaken by the respondent. See United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948) (a finding is "clearly erroneous" when "reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed"). Even if the respondent was credible, the Immigration Judge properly found that the respondent was ineligible for relief because he provided material support to terrorists in violation of section 212(a)(3)(B)(iv) of the Act. Providing repair services for the terrorists' weaponry is doubtless "material support" under the Act, rendering the respondent ineligible for asylum, withholding of removal, and protection under the Convention Against Torture. See Exh. 2A (indicating respondent participated in repairing weapons). Finally, the Immigration Judge properly found that the police arrested the respondent in October 1997, and thereafter kept watch on him, not on account of political opinion, but because of his involvement in a 4-hour armed altercation between the terrorists and police, in which one police officer was wounded (Tr. at 39; Exh. 2A). Accordingly, the appeal is dismissed.

_____
FOR THE BOARD

D

# UNITED STATES OF AMERICA

| RECEIPT NUMBER | | CASE TYPE I130    IMMIGRANT PETITION FOR RELATIVE, |
|---|---|---|
| WAC-07-224-51954 | | FIANCE(E), OR ORPHAN |
| **RECEIVED DATE** July 23, 2007 | **PRIORITY DATE** | **PETITIONER** PATHAK, DIANE E. |
| **NOTICE DATE** July 27, 2007 | **PAGE** 1 of 1 | **BENEFICIARY** A078 659 983 PATHAK, MAHESH KUMAR |

| | |
|---|---|
| MARTIN R. GUAJARDO <br> LAW OFFICE OF MARTIN RESENDEZ GUAJ <br> RE: DIANE E PATHAK <br> 555 CLAY ST <br> SAN FRANCISCO CA 94111-3029 | **Notice Type:** Receipt Notice <br><br> Amount received: $ 190.00 <br><br> Section: Husband or wife of U.S. <br> Citizen, 201(b) INA |

**Receipt Notice**- This notice confirms that USCIS received your application or petition ("this case") as shown above. **If any of the above information is incorrect, please immediately call 800-375-5283 to let us know.** This will help avoid future problems.

This notice does not grant any immigration status or benefit. It is not even evidence that this case is still pending. It only shows that the application or petition was filed on the date shown.

**Processing time** - Processing times vary by kind of case. You can check our website at www.uscis.gov for our current "processing times" for this kind of case at the particular office to which this case is or becomes assigned. On our websites "case status online" page, you can also view status or sign up to receive free e-mail updates as we complete key processing steps on this case. During most of the time this case is pending, however, our systems will show only that the case has been received, and the processing status will not have changed, because we will be working on other cases that were filed earlier than this one. We will notify you by mail, and show in our systems, when we make a decision on this case or if we need something from you. If you do not receive an initial decision or update from us within our current processing time, check our website or call 800-375-5283. Please save this notice, and any other notice we send you about this case, and please make and keep a copy of any papers you send us by any means, along with any proof of delivery to us. Please have all these papers with you if you contact us about this case.

**If this case is an I-130 Petition** - Filing and approval of a Form I-130, Petition for Alien Relative, is only the first step in helping a relative immigrate to the United States. The beneficiaries of a petition must wait until a visa number is available before they can take the next step to apply for an immigrant visa or adjustment of status to lawful permanent residence. To best allocate resources, USCIS may wait to process forms I-130 until closer to the time when a visa number will become available, which may be years after the petition was filed. Nevertheless, USCIS processes forms I-130 in time not to delay relatives ability to take the next step toward permanent residence once a visa number does become available. If, before final action on the petition, you decide to withdraw your petition, your family relationship with the beneficiary ends, or you become a U.S. citizen, call 800-375-5283.

**Applications requiring biometrics**- In some types of cases USCIS requires biometrics. In such cases, USCIS will send you a SEPARATE appointment notice with a specific date, time and place for you to go to a USCIS Application Support Center (ASC) for biometrics processing. You must WAIT for that separate appointment notice and take it (NOT this receipt notice) to your ASC appointment along with your photo identification. Acceptable kinds of photo identification are: a passport or national photo identification issued by your country, a drivers license, a military photo identification, or a state issued photo identification card. If you receive more than one ASC appointment notice, even for different cases, take them both to the first appointment.

**If your address changes**- If your mailing address changes while your case is pending, call 800-375-5283 or use the "Online Change of Address" function on our website. Otherwise, you might not receive notice of our action on this case.

Please see the additional information on the back. You will be notified separately about any other cases you filed.
U.S. CITIZENSHIP & IMMIGRATION SVC
CALIFORNIA SERVICE CENTER
P. O. BOX 30111
LAGUNA NIGUEL CA 92607-0111
**Customer Service Telephone: (800) 375-5283**



*80549*

Form I-797C (Rev. 01/31/05) N



UNITED STATES DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
IMMIGRATION COURT
San Francisco, California

File No.:       A 78 659 983                     April 30, 2003

In the Matter of

MAHESH KUMAR PATHAK,          )        IN REMOVAL PROCEEDINGS
                              )
          Respondent          )

CHARGES:     Section 212(a)(6)(A)(i) - alien present
             in the United States without being admitted
             or paroled

APPLICATIONS: Section 208(a) - political asylum;

              Section 241(b)(3) - withholding of removal;

              Protection under Article 3 of the
              United Nations Convention Against Torture;

              and, in the alternative, voluntary departure

ON BEHALF OF THE RESPONDENT:     ON BEHALF OF THE GOVERNMENT:

Hardip Singh Rai, Esquire        Katherine M. Sherocki, Esquire
Rai and Associates               Assistant District Counsel
220 Montgomery St., Suite 1000   Dept. of Homeland Security
San Francisco, California 94104  550 Kearney, 10th Floor
                                 San Francisco, CA 94108


ORAL DECISION OF THE IMMIGRATION JUDGE

          The Department of Homeland Security, then Immigration

and Naturalization Service, issued a Notice to Appear dated March

12, 2002 in the name of Mahesh Kumar Pathak, alleging that he is

a native and citizen of India who entered the United States at or

AUG 0 5 2003

jfr

near San Ysidro, California on May 20, 2000 without being
admitted or paroled. As such, the Service sought removal of the
respondent pursuant to Section 212(a)(6)(A)(i), as amended, as an
alien present in the United States without being admitted or
paroled. See Exhibit 1.

On May 16, 2002, at the initial master calendar
proceedings before the Court, the Government filed an addition
charge of inadmissibility and deportability on Form I-261,
amending allegation number three and stating as follows: "You
entered the United States at or near an unknown place on or about
an unknown date." See Exhibit 1A.

Respondent appeared before the Court on May 16, 2002
represented by counsel. Through counsel, respondent admitted the
allegations in the Notice to Appear, conceded removability,
declined to designate a country of removal. The Court designated
India. As to the Form I-261, respondent denied allegation number
three as amended.

The case was set for regular hearing to today, April
30, 2003. Respondent appeared before the Court and testified
today in support of the application for asylum and withholding of
removal.

Based on the respondent's admissions, removability has
been established by clear, unequivocal and convincing evidence.

The only issue before the Court are the respondent's
applications for asylum and withholding of removal.

A 78 659 983                    2                April 30, 2003

 

jfr

## STATUTORY REQUIREMENTS FOR ASYLUM AND
## WITHHOLDING OF REMOVAL

Under Section 208 of the Immigration and Nationality
Act, as amended, the Attorney General has discretion to grant
asylum to individuals who qualify as statutory refugees.  This
term refugee is defined at Section 101(a)(42)(A) of the Act as an
individual who is unwilling or unable to return to his or her
home country because of past persecution or a well-founded fear
of future persecution on account of race, religion, nationality,
membership in a particular social group or political opinion.
Such persecution must be feared from either the government or a
group the government is unable or unwilling to control.

An individual is entitled to withholding of removal if
the evidence demonstrates  clear probability that the applicant
would be persecuted were he to be returned to the home country.
He must show that it is "more likely than not that he will be
persecuted on account of one of the five statutory grounds were
he to return."

A rebuttable presumption of entitlement to withholding
arises when an applicant shows that he has suffered past
persecution such that his life or freedom was threatened in the
home country on account of a protected ground.  The difference
between asylum and withholding of removal is that in the
withholding of removal, the Attorney General has no discretion to
deny withholding to eligible individuals.

A 78 659 983                    3                    April 30, 2003

000069



jfr

An applicant for protection under Article 3 of the
Convention Against Torture must prove that it is more likely than
not that he would be tortured if removed to the country
designated for removal.  Such torture must be inflicted by or at
the instigation of or with the consent or acquiescence of a
public official or other person acting in an official capacity.

### FINDINGS OF FACTS AND CONCLUSIONS OF LAW

Because the Service filed an additional charge on Form
I-261, the first issue before the Court in this case is when did
the respondent enter the United States and whether the
respondent, following his entry into the United States, has
filed an application for asylum within one year from his entry
date.

At first the Court notes that the Service issued a
Notice to Appear dated March 12, 2002.  That the notice alleged
that the respondent entered the United States on May 20, 2000.
Based on that allegation, the Court would find that respondent's
application on Form I-589 was filed timely, since it was filed
with the Immigration and Naturalization Service on October 20,
2000, which is about five months after the alleged entry date.

The Government, however, filed an additional charge
amending the entry date and entry place, placing the burden of
proof on the respondent to show as to the place and the date of
entry.

Respondent in this case testified that he left India in

A 78 659 983                      4                   April 30, 2003

000070



jfr

November 1999. The respondent testified that he board his plane
in New Delhi with his own passport and that from New Delhi he
flew to Taskent, in Russia. Then from Russia, he took the train
to Moscow in Russia. Then he took a bus to Belarus and from
there was bused for a short distance and then walked for about
five to six miles and then transferred into another car and was
driven to the capital city, Kiev, Ukraine. From there he would
walk through the night, cross canal and then entered Germany.
From Germany he went to Spain and then from Spain he went to
Mexico, via France. And then from Mexico he entered the United
States.

    The respondent testified that it took him a period of
about six months from the time he left India in November 1999 to
the time he entered the United States on May 20, 2000.
Respondent testified that he left India with an Indian passport
and entered the United Sates with a Netherlands passport.
Respondent was able only to submit three pages of his Indian
passport for he said that the Indian passport had been taken away
from him while he was in Belarus.

    Respondent was interviewed by an Asylum Officer on his
application for asylum on February 26, 2002. The assessment to
refer, Exhibit 16A, by the Immigration and Naturalization Service
Asylum Officer, found that the applicant has shown by clear and
convincing evidence that he entered on May 20, 2000 and because
his application was filed October 20, 2000, the respondent timely

A 78 659 983                    5                    April 30, 2003



jfr

filed the application for asylum.

The Court, on this issue, has concluded that with respect to this part, the Court finds that respondent's testimony corroborates with his application for asylum, Exhibit 2, and his declaration that the testimony was consistent and corroborating with the declaration and the application for asylum. The Court concurred with the finding in the assessment to refer and finds therefore the application for asylum was timely filed within one year and therefore respondent's application was timely.

The Court is now turning to the respondent's application for asylum and withholding of removal.

The Government, toward the end of cross-examination of the respondent, moved the Court to pretermit or to deny the respondent's application on Form I-589 because based on the record, according to the Government, the respondent has engaged in activities in supporting, abetting and aiding terrorist activities. The Service based the motion on the provision of Section 208(b)(2). Pursuant to Section 208(b)(2), an alien is not eligible to apply for asylum if the Attorney General determines that the alien is inadmissible under Section 237(a)(4)(B) relating to terrorist activities.

Section 237(a)(4)(B) provides in pertinent part as follows. Any alien in and admitted to the United States shall be removed if the alien is within one or more of the following classes of deportable aliens: Any alien who has engaged, is

A 78 659 983                    6                    April 30, 2003



jfr

engaged or at any time after admission engaged in any terrorist
activity as defined in Section 212(a)(3)(B)(iii).

Section 212(a)(3)(B)(ii) provides in pertinent part:
The term engaged in terrorist activity means to commit in any
individual capacity, or as a member of an organization, an act of
terrorist activity or an act which the actor knows or reasonably
should know affords material support to any individual,
organization or government in conducting a terrorist activity at
any time, including any of the following acts.  First, the
preparation of the planning of the terrorist activity. Second the
gathering of information or potential targets for terrorist
activity.  Third, the providing of any type of material support,
including a safe house, transportation, communication, funds,
false documentation, identification, weapons, explosives,
training to any individual the actor knows or has reason to
believe has committed or plans to commit terrorist activities.
Soliciting of funds or other things of value for terrorist
activity or for any terrorist organization; the solicitation of
any individual for membership in a terrorist organization,
terrorist government or to engage in terrorist activity.

The Court is now considering the Service second motion
to pretermit the application for asylum based on the allegation
of respondent being engaged in terrorist activity.

Respondent in this case testified that he left India
because of his fear of the police in India and also because of

A 78 659 983                    7                    April 30, 2003

000073



jfr

his fear of the Kashmir terrorists.

Respondent testified that his father owned a work shop and repair shop in Kashmir. Respondent testified that the work shop was in Lal Chowk in Jammu and Kashmir. Respondent testified that after he completed his education, he started working with his father. Respondent testified that in January 1997, the respondent and his father became aware that in the work shop that there were four employees who were all Muslim were involved in activities supporting the terrorists. Respondent testified that he and his father noticed those activities in January 1997 and then attempt to persuade those four Muslim workers to stop those activities.

The respondent testified that in March 1997 a group of terrorists came to the work shop and threatened the respondent and his father, and ordered them to repair their Sten guns. The respondent testified that his father, respondent and his wife and the two children were there. The respondent testified that under the threats by the terrorists they had to let the workers work on the Sten guns. He testified that the militants continued to come into the work shop to ask for the reparation and then the respondent's father and the respondent himself had to let them to continue to repair those guns.

He testified that in October 1997, he was arrested under the following circumstances. Respondent testified that on that day the terrorist came to the shop and stayed in the shop

A 78 659 983                    8                    April 30, 2003



jfr

and ordered them to repair their automatic guns. And because
they stayed late after the work shop hours, the military who
patrolled the area then knocked at the door. The terrorists
ordered the respondent and his father not to open the work shop.
The military then opened fire and during the exchange of fire,
three militants were able to escape, one was killed and on the
military side or the government side, one of the members were
wounded. Respondent testified that he was detained for ten days
and during the detention he was beaten and tortured by the police
and was released after the family paid a bribe of 25,000 rupees.

Respondent testified that following the release, the
police would stop by or come to the work shop occasionally to
continue to monitor and surveil the respondent regarding the
activities in the work shop.

The respondent testified that his father died
subsequently in 1998 at which time the respondent then moved to
Jammu and worked there for another work shop. There one day he
was recognized by police inspector and was arrested for six days.
The respondent was then transferred to a military authority who
then transferred the respondent back to Shirnaghar, where his
family resided, and asked the respondent about the location where
the terrorists had stored their ammunition. The respondent's
wife was able to obtain the respondent's release by paying a
bribe.

After that, the respondent moved to the in-laws in

A 78 659 983                    9                    April 30, 2003



jfr

Punjab at the place called Korte Patuhi. One day when he was
away from home, the police raid the in-laws' home in an attempt
to arrest the respondent. Respondent, however, was not home and
upon learning of the police raiding the in-laws' home, respondent
then went to New Delhi where he worked for another work shop.
There, he testified, he ran into two terrorists who are both
Muslim and who are from Kashmir. They forced the respondent to
follow them to their home, stay there one night, and from there
took him into a train to Jammu. The respondent testified that
the ride on the train took about eight hours. From there they
were transferred to another bus and from there to Shirnaghar, the
bus ride lasted about 10 to 11 hours. Respondent testified in
detail that during the bus ride, as well as when he was in the
train, he was sandwiched and escorted by two terrorists.

When they get off at Shirnaghar, the respondent, under
the escort by four individuals, all terrorists, then went home
and there he picked up his key and head to the work shop where
the ammunition supposedly kept by the terrorists. At police
check point, however, one of the policeman identified the
respondent. The respondent and the group then escaped and the
respondent returned to Jammu.

From Jammu the respondent then made arrangements to
leave India at New Delhi. He obtained a passport from a travel
agent and from there left India. Respondent was unable to
provide the passport, only three pages of the Indian passport

A 78 659 983                  10              April 30, 2003



jfr

were provided.  Respondent testified that the three pages of his

passport were mailed to him by his wife together with her

affidavit and an affidavit from the brother-in-law.  He testified

that the three pages of that Indian passport were obtained from

the travel agent who initially provided the respondent with the

passport.  Interestingly, he testified that that passport was

destroyed by the travel agent when respondent was in Belarus.  It

isn't clear from the record why the passport was kept for two

years by the travel agent and only three pages were obtained by

the family and mailed to the respondent.

        The respondent's testimony has several points clearly

in contradiction with the respondent's application and

declaration.  First of all, the respondent testified that he was

not aware, nor his father was aware, of the activities of the

terrorists until January 1997.  Respondent testified and

persisted on testifying that they were not aware until January

1997.  In his declaration, however, it was also clear that he

stated that they came to know since 1995 that there is something

going wrong in the work shop, that they suspected the workers had

links and associations with the militants but because they feared

the militants and also because the workers were doing a good job,

they closed their eyes on those activities and it was not until

January 1997 that they decided to talk to those workers.

Respondent's testimony in this case is clearly in contradiction

with the declaration.  The Court finds that respondent in this

A 78 659 983                11              April 30, 2003

000077



jfr

case, simply tried to put a distance between him and the militants and therefore recant on what he state earlier on his declaration.

The Court also finds that the respondent's testimony regarding the destruction of his passport, Exhibit 5, and the fact that it was copied two years later, to be implausible. Indeed, the Court finds that the respondent after testifying and unable or unwilling to provide the passport itself, concocted a story about the destruction of the passport and supplemented or tried to justify the presence of Exhibit 5, three copies, by testimony that it was obtained in India by his wife from the travel agent. But the record has no explanation as to why that copy was obtained two years later and only three pages and not the whole passport. The Court found that part of the testimony to be incredible and implausible.

Respondent testified at length regarding the circumstances and the departure from India until his arrival in the United States in May 2000.

Based on the record, this Court finds whether this respondent willingly or forcibly acting, but it is clear from the record that he has knowledge of the terrorist activities at least from 1995. That those terrorist activities and the activities of the four Muslim workers was to help in repairing the weapons brought by the terrorists. That either the respondent and his father condoned, by allowing those workers to

A 78 659 983                12                April 30, 2003

jfr

repair the automatic guns for the period from 1995 to 1997 and
not only that, until at least October 1997 when they were
arrested.  That there is enough evidence in the record to make a
finding that not only the respondent and his father allowed or
condoned the use of the work shop and the labor of the Muslim
workers to repair the automatic guns with the knowledge about the
nature of those activities, they, at least on one occasion,
performed the repair job themselves in March 1997.

        There is also evidence that there was an exchange of
fire between the law enforcement authority in India in Kashmir
and the people in the work shop in the presence of the
respondent.  It isn't clear from the record as to whether or not
the respondent himself, actively or not, were involved in that
exchange of fire but suffice it to say that at the time it
occurred, the respondent were on the side of the militants.

        The Court will also find that the respondent was
arrested in October 1997, not as a result of any of his political
opinion, but as a result of his presence during an investigation
and activities by law enforcement against those militant and
terrorist activities.

        The Court further finds that respondent's testimony
regarding the fact that he was forced to follow two individuals,
and there is no record that those two individual were armed, that
he was kidnapped at 5 p.m. in a very crowded place, escorted to
his home by train and by bus and by foot all the way, the Court

A 78 659 983                    13              April 30, 2003



jfr

cannot accept that testimony as plausible. It sounds
preposterous that an individual, a Hindu in the position of the
respondent, would be forced for several hours and for several
days, to follow by public transportation, the terrorists
throughout the territory of India. This Court finds that this
respondent cooperated, to a certain extent, and did follow those
terrorists back to his work shop. The Court notes that in part
of his testimony, as well as his declaration, he stated that the
terrorists asked him to go back to his home, not to his work
shop, in order to get the ammunition. It was the respondent's
testimony that he went home to pick up the key and from the home
went to the work shop and if it were not for the presence of the
police at the police check point, this respondent would have been
able to get to the work shop and the terrorists would have been
able to obtain their ammunition cache at the work shop.

        Based on all of the foregoing in the record, this Court
will find that this respondent has engaged in activities
assisting and aiding, abetting the terrorist activities knowing
all along since 1995 regarding the nature of those activities.
Therefore, it is the Court's order and finding that respondent is
barred from asylum under Section 208(a).

        The Court is now turning to the application for
withholding of removal under Section 241(b)(3).

        Section 241(b)(3)(B) provides in pertinent part "An
alien who is described in Section 237(a)(4)(B) shall be

A 78 659 983                    14                  April 30, 2003

 

jfr

considered to be an alien with respect to whom there are reasonable grounds for regarding the alien as a danger to the security of the United States."

Section 237(a)(4)(B) provides in pertinent part "An alien who has engaged, or is engaged, at the time or any time after admission, engaged in any terrorist activity is deportable. Based on the Court's above finding, this Court finds that the respondent because of his activities is regarded as a danger to the security of the United States and therefore is barred from withholding of removal.

The Court granted the Government's motion to pretermit the respondent's application for asylum and withholding of removal.

The last issue before the Court is the respondent's application for protection under the Convention Against Torture.

Based on the respondent's testimony and evidence in the record, this Court finds that the respondent has not shown that it is more likely than not that he would be tortured if he were to be removed to India.

In so finding, the Court also refers to 8 C.F.R. 208.18(a)(3) which provides in pertinent part "Lawful sanctions do not include sanctions which defeat the object and purpose of the Torture Convention". In this case, the authority in India arrested the respondent as a result of his association or his activities in assisting the terrorists' activities. Therefore,

A 78 659 983                    15                    April 30, 2003

 

jfr

those activities are not covered under the protection of the Convention Against Torture.

Turning now to the last application, the application for voluntary departure. Because the Court has found that the respondent is deportable under Section 237(a)(4), terrorist activities, this respondent is barred from voluntary departure.

IT IS THE COURT'S ORDER that respondent's application for asylum be denied.

IT IS THE COURT'S ORDER that respondent's application for withholding under Section 241(b)(3) be denied.

IT IS FURTHER ORDERED that the respondent's application for CAT be denied.

IT IS THE COURT'S ORDER that the respondent be removed from the United States to India on the charge contained in the Notice to Appear.

TUE PHAN QUANG
Immigration Judge

Approved on to its
contents only.
9/9/03

RECEIVED
DEPARTMENT OF JUSTICE

SEP - 5 2003

EXECUTIVE OFFICE
IMMIGRATION REVIEW
IMMIGRATION COURT
SAN FRANCISCO, CALIFORNIA

A 78 659 983                    16                    April 30, 2003

F

**Application for Asylum and Withholding of Removal**

*Start Here - Please Type or Print.* USE BLACK INK. SEE THE SEPARATE INSTRUCTION PAMPHLET FOR INFORMATION ABOUT ELIGIBILITY AND HOW TO COMPLETE AND FILE THIS APPLICATION.

## PART A. INFORMATION ABOUT YOU.

| | |
|---|---|
| 1. Alien Registration Number(s), if any (A#'s) 00-000-000 78659983 | 2. Social Security Number 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 6122778 24 |

3. Complete Last Name
Pathak

4. First Name
Mahesh

5. Middle Name
Kumar

6. What Other Names Have You Used? *(Include maiden name and aliases)*
none

7. Residence in the U.S.
C/O

Telephone Number
510-649-9955

Street Number and Name
2324 9th Street

Apt. No.
4

City
Berkeley

State
CA

ZIP Code
94710

8. Mailing Address in the U.S. if Other than Above
C/O

Telephone Number

Street Number and Name

Apt. No.

City

State

ZIP Code

9. Sex  ☒ Male  ☐ Female

10. Marital Status: ☒ Single  ☒ Married  ☐ Divorced  ☐ Widowed

11. Date of Birth *(Mo/Day/Yr)*
01/19/1959

12. City and Country of Birth
Phagwara, Jammu & Kashmir, India

13. Present Nationality *(Citizenship)*
India

14. Nationality at Birth
Indian

15. Race, Ethnic or Tribal Group
Kashmiri Hindu Pandit

16. Religion
Hindu

17. *Check each box that applies.*

☒ I am not now in removal, deportation or exclusion proceedings.

☐ I am now in removal, deportation or exclusion proceedings.

☐ I was previously in removal, deportation or exclusion proceedings.

☒ I have never been in removal, deportation or exclusion proceedings.

18. *Complete 18a through 18g.*

a. When did you last leave your country? *(Mo/Day/Yr)* 10/20/1999

b. When did you last enter the U.S.? *(Mo/Day/Yr)* 05/20/2000

c. Where did you last enter the U.S.? San Ysidro, CA

d. What was your status when you last entered the U.S.? *(What type of visa did you have, if any)?* ewi

e. What is your I-94 Number? ewi

f. What is the expiration date of your authorized stay, if any? n/a

g. Have you previously entered the U.S.? ☒ No ☐ Yes If YES, list place, date, and your status for each entry. *(Attach additional sheets as needed.)*

Date _____ Place _____ Status _____

Date _____ Place _____ Status _____

Date _____ Place _____ Status _____

---

**FOR INS USE ONLY**

Returned

Receipt

Resubmitted

Reloc Sent

Reloc Rec'd    Exhibit #    2
4/30/03  PB
(date)    (Initials)

Action:
Interview Date:

Asylum:
☐ Granted
☐ Denied
☐ Referred
☐ Recommended Approval Date _____

Date A.O. final decision or referral issued _____

Total number of persons granted asylum _____

**For EOIR Use Only**

**To Be Completed by Attorney or Representative, if any**

☒ Check if G-28/EOIR-28 is attached showing you represent the applicant

INS VOLAG or PIN # _____

ATTY State License # _____



①

## Information About You - Continued.

| 19. What is your native language?<br>Hindi | 20. Are you fluent in English?<br>☐ Yes  ☒ No | 21. What other languages do you speak fluently?<br>Punjabi |
|---|---|---|

22. Have you ever applied to the United States Government or to any other Government(s) for refugee status, asylum, withholding of deportation, or withholding of removal?

☒ No.

☐ I was included in a pending application of my parent(s). However, I am now 21 years old or married so I am filing my own application.

☐ I was included in my spouse's application, but now I wish to file my own application.

☐ Yes. (In what country and what was the decision? Also specify the date of the decision.) Country _____ Date _____

Decision _____

| 23. What country issued your last passport or travel document?<br>India | 24. Passport # do not remember<br>Travel Document # | 25. Expiration Date<br>do not remember |
|---|---|---|

16. Prior address in last country of residence or country in which you fear persecution. *(List Address, City/Town, Province, State, Department, and Country)*

Lal Chowk, Behind Suraj Motors Store, Srinagar, Jammu & Kashmir, India

17. Provide the following information about your education, beginning with the most recent.

| Name of School | Type of School | Location | Attended From (Mo/Yr) | To (Mo/Yr) |
|---|---|---|---|---|
| Government High School | High School | Srinagar, India | 1968 | 1978 |
| | | | | |
| | | | | |
| | | | | |

18. Provide the following information about your residences during the last five years. List your present address first. *(Use additional sheets of paper if necessary.)*

| Number and Street | City | Province or State | Country | Dates From (Mo/Yr) | To (Mo/Yr) |
|---|---|---|---|---|---|
| 2324, 9th Street # 4 | Berkeley | CA | USA | 05/2000 | Present |
| Lal Chowk, Behind Suraj Motors | Srinagar | Jammu & Kashmir | India | Since Birth | 1999 |
| | | | | | |
| | | | | | |

19. Provide the following information about your employment during the last five years. List your present employment first. *(Use additional sheets of paper if necessary.)*

| Name and Address of Employer | Your Occupation | Dates From (Mo/Yr) | To (Mo/Yr) |
|---|---|---|---|
| Unemployed | n/a | n/a | n/a |
| Pathak Machinery Works, Lal Chowk, Srinagar | Self employed | 1978 | 1999 |
| | | | |
| | | | |

30. Provide the following information about your parents.

| Name | Country and City of Birth | Location |
|---|---|---|
| Raghunath Das-Father | India | Deceased |
| Suhag Rani-Mother | India | Deceased |

②

## PART B. INFORMATION ABOUT YOUR SPOUSE AND CHILDREN.

Your Spouse.    ☐ I am not married. *(Skip to Part B, Your Children.)*

| 1.    Alien Registration Number (A#) | | 2. Passport/ID Card, etc.# | | |
|---|---|---|---|---|
| n.a | | | | |
| 3. Complete Last Name | 4. First Name | 5. Middle Name | | 6. Date of Birth *(Mo/Day/Yr)* |
| Devi | Tara | | | 05/05/1965 |
| 7. Date of Marriage *(Mo/Day/Yr)* | 8. Place of Marriage | 9. City and Country of Birth | | |
| 1986 | Kot Patui, Hoshiarpur, Punjab, India | Punjab, India | | |
| 10. Nationality *(Citizenship)* | 11. Race, Ethnic or Tribal Group | | | 12. Sex |
| Indian | Asian Indian - Hindu | | | ☐ Male ☒ Female |
| 13. Is this person in the U.S.?   ☐ Yes. *Complete blocks 13 to 24.)*   ☒ No. *(Specify Location)* | | | | 14. Social Security # |
| 15. Place of Last Entry in the U.S.? | 16. Date of Last Entry in the U.S.? *(Mo/Day/Yr)* | 17. I-94# | 18 Status when Last Admitted *(Visa type, if any)* | |
| 19. Expiration of Status *(Mo/Day/Yr)* | 20. Is your spouse in removal, deportation or exclusion proceedings? ☐ Yes ☐ No | 21. If previously in the U.S., Date of Previous Arrival *(Mo/Day/Yr)* | | |
| 22. Place of Previous Arrival | | 23. Status at Time of Previous Arrival | | |

24. It in the U.S. is this person to be included in this application? *(Check the appropriate box.)*

☐ Yes. *(Attach one(1) photograph of your spouse in the upper right hand corner of Page 3 on the extra copy of the application submitted for this person.)*
☐ No, because my spouse is/has:
   ☐ Filing separately.
   ☐ Separate application pending.
   ☐ Other reasons.

### All of Your Children, Regardless of Age or Marital Status.

*(Use Supplement A Form or attach additional pages and documentation if you have more than two (2) children )*

| 1. Alien Registration Number (A#) | | 2. Passport/ID Card, etc.# | | |
|---|---|---|---|---|
| n.a | | | | |
| 3. Complete Last Name | 4. First Name | 5. Middle Name | | 6. Date of Birth *(Mo/Day/Yr)* |
| Pathak | Gitanjali | | | 09/15/1989 |
| 7. City and Country of Birth | 8. Nationality (Citizenship) | 9. Race, Ethnic or Tribal Group | | 10. Sex |
| Hoshiarpur, Punjab, India | Indian | Asian Indian - Hindu | | ☐ Male ☒ Female |
| 11. Is this child in the U.S.?   ☐ Yes. *Complete blocks 12 to 22.)*   ☒ No. *(Specify Location)* | | | | 12. Social Security # |
| 13. Place of Last Entry in the U.S.? | 14. Date of Last Entry in the U.S.? *(Mo/Day/Yr)* | 15. I-94# | 16. Status when Last Admitted *(Visa type, if any)* | |
| 17. Expiration of Status *(Mo/Day/Yr)* | 18. Is this child in removal, deportation or exclusion proceedings? ☐ Yes ☐ No | 19. If previously in the U.S., Date of Previous Arrival *(Mo/Day/Yr)* | | |
| 20. Place of Previous Arrival | | 2 1. Status at Time of Previous Arrival | | |

22. It in the U.S. is this person to be included in this application? *(Check the appropriate box.)*

☐ Yes. *(Attach one(1) photograph of your child in the upper right hand corner of Page 3 on the extra copy of the application submitted for this person.)*
☐ No, because child is/has:
   ☐ Filing separately.
   ☐ Separate application pending.
   ☐ Over 21 years of age.
   ☐ Married
   ☐ Other reasons.

**Information About Your Spouse and Children** Continued *(Use Supplement A Form or attach additional sheet* er *to list additional children.)*

All of Your Children, Regardless of Age or Marital Status.

| 1. Alien Registration Number (A#): n.a | | 2. Passport/ID Card, etc.# | | |
|---|---|---|---|---|
| 3. Complete Last Name<br>Pathak | 4. First Name<br>Abishek | 5. Middle Name | | 6. Date of Birth *(Mo/Day/Yr)*<br>03/03/1993 |
| 7. City and Country of Birth<br>Hoshiarpur, Punjab, India | 8. Nationality *(Citizenship)*<br>Indian | 9. Race, Ethnic or Tribal Group<br>Asian Indian - Hindu | | 10. Sex<br>☒ Male ☒ Female |
| 11. Is this person in the U.S.? ☐ Yes. Complete *blocks 11 to 22.)* ☒ No. *(Specify Location)* | | | | 12. Social Security # |
| 13. Place of Last Entry in the U.S.? | 14. Date of Last Entry in the U.S.? *(Mo/Day/Yr)* | 15. I-94# | 16. Status when Last Admitted *(Visa type if any)* | |
| 17. Expiration of Status *(Mo/Day/Yr)* | 18. Is this child in removal, deportation or exclusion proceedings? ☐ Yes ☐ No | | 19. If previously in the U.S., Date of Previous Arrival *(Mo/Day/Yr)* | |
| 20. Place of Previous Arrival | | | 21. Status at Time of Previous Arrival | |

22. If in the U.S., is this person to be included in this application? *(Check the appropriate box.)*

☐ Yes. *(Attach one(1) photograph of your child in the upper right hand corner of Page 3 on the extra copy of the application submitted for this person.)*
☐ No, because child is/has:
  ☐ Filing separately.
  ☐ Separate application pending.
  ☐ Over 21 years of age.
  ☐ Married.
  ☐ Other reasons.

## PART C. INFORMATION ABOUT YOUR CLAIM TO ASYLUM.
*(Use Supplement B Form or attach additional sheets of paper as needed to complete your responses to the questions contained in Part C.)*

1   Why are you seeking asylum? Explain in detail what the basis is for your claim. *(Attach additional sheets of paper as needed.)*

Please see attachment

④

**Information About Your Claim to Asylum continued.**

2. Have you or any member of your family ever belonged to or been associated with any organizations or groups in your home country, such as, but not limited to, a political party, student group, labor union, religious organization, military or paramilitary group, civil patrol, guerrilla organization, ethnic group, human rights group, or the press or media?

☐ No.  ☒ Yes. If yes, provide a detailed explanation of your or your relatives' involvement with each group and include the name of each organization or group; the dates of membership or affiliation; the purpose of the organization; your duties or your relatives' duties or responsibilities in the group or organization; and whether you or your relatives are still active in the group(s). *(Attach additional sheets of paper as needed)*

   Please see attachment

3. Have you or any member of your family ever been mistreated or threatened by the authorities of your home country or any other country or by a group or groups that are controlled by the government, or that the government of the country is unable or unwilling to control?

☐ No.  ☒ Yes. If YES, was it because of any of the following reasons? *(Check each of the following boxes that apply.)*

☐ Race  ☒ Religion  ☐ Nationality  ☒ Membership in a particular social group  ☒ Political Opinion

On a separate sheet of paper, specify for each instance, what occurred and the circumstances; the relationship to you of the person involved; the date; the exact location; who it was who took such action against you or your family member(s); his/her position in the government or group; the reason why the incident occurred. Attach documents referring to these incidents, if they are available. *(Attach additional sheets of paper as needed.)*

   Please see attachment

4. Have you or any member of your family ever been accused, charged, arrested, detained, interrogated, convicted and sentenced, or imprisoned in your country or any other country, including the United States?

☐ No.  ☒ Yes. If YES, for each instance, specify what occurred and the circumstances; dates; location; the duration of the detention or imprisonment; the reason(s) for the detention or conviction; the treatment received during the detention or imprisonment; any formal charges that were lodged against you or your relatives; the reason for release; treatment after release. Attach documents referring to these incidents if they are available. *(Attach additional sheets of paper as needed.)*

   Please see attachment

⑤

**Information About Your Claim to Asylum - Continued.**

5. Do you fear being subjected to torture (severe physical or mental pain or suffering, including rape or other sexual abuse) in your home country or any other country if you return?

☐ No.   ☒ Yes. If YES, explain why. *(Attach additional sheets of paper as needed.)*
Please see attachment

6. What do you think would happen to you if you returned to the country from which you claim you would be subjected to persecution? Explain in detail and provide information or documentation to support your statement, if available. *(Attach additional sheets of paper as needed.)*
Please see attachment

7. Describe in detail your trip to the United States from your home country. After leaving the country from which you are claiming asylum, did you or your spouse or child(ren), who are now in the United States, travel through or reside in any other country before entering the United States?

☐ No.   ☒ Yes.   If YES, for each person, identify each country and indicate the length of stay; the person's status while there; the reasons for leaving; whether the person is entitled to return for residence purposes; and if the person applied for refugee status or for asylum while there; or why he or she did not do so. *(Attach additional sheets of paper as needed.)*
Please see attachment

⑥

**PART D. ADDITIONAL INFORMATION** ???UT YOUR APPLICATION FOR ASYLUM.
*(Use Supplement B Form or attach additional sheets of paper as needed to complete your responses to the q????ons contained in Part D.)*

1    Do you, your spouse, or your child(ren) now hold, or have you ever held, permanent residence, other permanent status, or citizenship, in any country other than the one from which you are now claiming asylum?

☒ No.    ☐ Yes. If YES, explain. *(Attach additional sheets of paper as needed).*


2    Have you, your spouse, your child(ren), your parents ever filed for, been processed for, or been granted or denied refugee status or asylum by the United States Government?

☒ No.    ☐ Yes. If YES, explain the decision and what happened to any status you received as a result of that decision. It you have been denied asylum by an Immigration Judge or the Board of Immigration Appeals, please describe any change in country conditions or your own circumstances since the date of the denial that may affect your eligibility for asylum. *(Attach additional sheets of paper as needed)*


3    Have you, your spouse, your child(ren), or your parents ever filed for, been processed for, or been granted or denied refugee status or asylum by any other country?

☒ No.    ☐ Yes. If YES, explain the decision and what happened to any status you received as a result of that decision. *(Attach additional sheets as paper as needed.)*


4.   Have you, your spouse, or child(ren) ever caused harm or suffering to any person because of his or her race, religion, nationality, membership in a particular social group or belief in a particular political opinion, or ever ordered, assisted, or otherwise participated in such acts?

☒ No.    ☐ Yes. If YES, describe, in detail, each such incident and your own or your spouse's or child(ren)'s involvement. *(Attach additional sheets of paper as needed*


5    After you left your country of claimed persecution for the reasons you have described, did you return to that country?

☒ No.    ☐ Yes. If YES, describe, in detail, the circumstances of your visit, for example, the date(s) of the trip(s), the purpose(s) of the trip(s), and the length of time you remained in that country for the visit(s). *(Attach additional sheets of paper as needed.)*


6    Are you filing the application more than one year after your last arrival in the United States?

☒ No.    ☐ Yes. If YES, explain why you did not file within the first year after you arrived. You should be prepared to explain at your interview or hearing why you did not file your asylum application within the first year after you arrived. For guidance in answering this question see Part I- Filing Instructions, Section V. "Completing the Form," Part D. *(Attach additional sheets of paper as needed.)*

⑦

OMB No 1115-0086

## PART E. SIGNATURE.



*After reading the information on penalties in the instructions, complete and sign below. If someone helped you must complete Part F.*

I certify, under penalty of perjury under the laws of the United States of America, that this application and the evidence submitted with it is all true and correct. Title 18, United States Code, Section 1546, provides in part: "Whoever knowingly makes under oath, or as permitted under penalty of perjury under Section 1746 of Title 28, United States Code, knowingly subscribes as true, any false statement with respect to a material fact in any application, affidavit, or other document required by the immigration laws or regulations prescribed thereunder, or knowingly presents any such application, affidavit, or other document containing any such false statement or which fails to contain any reasonable basis in law or fact -- shall be fined in accordance with this title or imprisoned not more than five years, or both". I authorize the release of any information from my record which the Immigration and Naturalization Service needs to determine eligibility for the benefit I am seeking.

*WARNING:* Applicants who are in the United States illegally are subject to removal if their asylum or withholding claims are not granted by an asylum officer or an Immigration Judge. Any information provided in completing this application may be used as a basis for the institution of, or as evidence in, removal proceedings even if the application is later withdrawn. Applicants determined to have knowingly made a frivolous application for asylum will be permanently ineligible for any benefits under the Immigration and Nationality Act. See INA 208(d)(6) and 8 CFR 208.18.

Signature of Applicant *(The person named in Part E)*

Mahesh Kumar Pathak          09/23/2000
*Sign your name so it all appears within the brackets*      Date *(Mo/Day/Yr)*

Print Name        Write your name in your native alphabet   महेश कुमार पाठक
Mahesh Kumar Pathak

Did your spouse, parent or child(ren) assist you in completing this application? [X] No   [ ] Yes *(If YES, list their name(s) and relationship)*

*(Name)* _____ *(Relationship)* _____    *(Name)* _____ *(Relationship)* _____

Did someone other than you or your spouse, parent or child(ren) prepare this application? [ ] No   [X] Yes *(Complete Part F)*

Asylum applicants may be represented by counsel. Have you been provided with a list of persons who may be available to assist you, at little or no cost, with your asylum claim? [X] No   [ ] Yes

## PART F. SIGNATURE OF PERSON PREPARING FORM IF OTHER THAN ABOVE. *Sign below.*

I declare that I have prepared this application at the request of the person named in Part E, that the responses provided are based on all information of which I have knowledge, or which was provided to me by the applicant and that the completed application was read to the applicant in his or her native language for verification before he or she signed the application in my presence. I am aware that the knowing placement of false information on the Form I-589 may also subject me to civil penalties under 8 U.S.C. Section 1324(c).

| Signature of Preparer | Print Name | Date *(Mo/Day/Yr)* |
|---|---|---|
| *Balvinder Singh Pannu* | Balvinder Singh Pannu | 09/23/2000 |

Daytime Telephone Number   415    693-9131      Address of Preparer Street Number and Name    300 Montgomery Street

| Apt. No. | City | State | ZIP Code |
|---|---|---|---|
| 1000 | San Francisco | CA | 94104 |

## PART G. TO BE COMPLETED AT INTERVIEW.

*You will be asked to complete this Part when you appear before an asylum officer of the Immigration and Naturalization Service (INS), or an Immigration Judge of the Executive Office for Immigration Review (EOIR) for examination.*

I swear (affirm) that I know the contents of this application that I am signing, including the attached documents and supplements, that they are [ ] all true or [ ] not all true to the best of my knowledge and that corrections numbered _____ to _____ were made by me or at my request.

Mahesh Kumar Pathak              Signed and sworn to before me by the above-named applicant on:

Signature of Applicant                      Date *(Mo/Day/Yr)*

महेश कुमार पाठक

Write your Name in your Native Alphabet               Signature of Asylum Officer or Immigration Judge

⑧

000576

**Attachment to I-589**
**Re: Mahesh Kumar Pathak**

I am Mahesh Kumar Pathak resident of Lal Chowk, Backside
Suraj Motors Store, Srinagar, Jammu and Kashmir, India.
After completing my education I had started working in my
father's workshop. My father had a workshop since 1950. In
India police arrested and tortured me. Jammu and Kashmir is
a trouble spot and has been a bone of contention between
India and Pakistan since the partition of India in 1947.

We were doing the work of repairing of truck parts. I had
four other workers in my workshop and they were Muslims. In
1995 we came to know that there is something going wrong in
our workshop, it was suspected that our workers had links
with the militants.   Because of fear we did not ask our
workers to stop contacts with the militants. Our workers
were doing the good work in our workshop that's why we had
ignored their personal matters.

These things were going on for two years. In January 1997 we
had tried to convince our workers not to indulge in these
types of activities. They informed the militants. In March
1997 militants came to our house at about 12 `o'clock during
night and knocked our door, my father opened the door and
they entered our house and pointed the guns towards us and
ordered us to repair their Sten guns (automatic guns). At
that time my father, my wife and two children were there. We
had repaired their Sten guns because they threatened to kill
the whole family if we did not do their work. After that the
militants visited our workshop many times but we did not
able to inform the police because of fear. In Jammu and
Kashmir there was a rule of Police and the military forces.
If the Police came to know that those people had links with
the militants then the police starts harassing those people,
that's why we could not inform the police. These happenings
were going on till January 1998.

In the month of October 1997 the militants came again to our
workshop at 4 p.m. and forced us to do their repairing of
Sten guns. We had to close the workshop at 5 p.m. We were
doing their work after closing the door at 9 o' clock;
militants were sitting besides us. Military forces were
patrolling the streets, when they saw the light inside they
knocked the door then the militants said don't open the
door, then the police got suspicious, and they surrounded
the workshop. We were nine people inside the workshop, four
of them my workers and four were the militants and myself.
There was one window has the opening towards the deep ditch.
When we did not open the door, they gave us warning if we
didn't open the door they are going to start firing. After
that they started firing, the militants also opened the

Exhibit #_____ 2A
4/30/03  TPL
(date)    (initials)



fire; the encounter lasted three hours. Three militants had escaped from the window, one was killed, and one policeman was wounded. Police and the military forces had arrested my four workers and me. Police detained us for 10 days at different places and they were asking questions why are you sheltering the militants, you are involving with them Police had beaten us mercilessly. My family had been looking for me and finally got me released along with our four workers by paying 25000 rupees as a bribe.

After that police started visiting our workshop and house after every three or four days and harassed us. On one side there was a fear from militants and on the other side police picked up my father and me any time they want, they beat us and said that you are secessionist. The Police officers were behaving with us like militants. My father had died by heart attack due to police torture and humiliation. Due to police interference we rarely opened the workshop, I made up my mind to shift to Jammu and look for work in somebody else's workshop.

I left my family at Srinagar. One day when I was working at Main Bazar in Jammu, the police inspector (one time at Srinagar) got me arrested and brought me to the police station and I was beaten without any reason. Inspector was blaming me now you are involving with the militants in Jammu too. After detaining me for 6 days at police station they hand over me to the military. Military shifted me to Srinagar and started asking to give them the clue where the militants had stored the ammunition and their whereabouts. After some days my wife got me released by paying the bribe with the condition that I have to give attendance every day in the evening.

After two months I left Srinagar and had gone to my in-law's house at Kot Fatuhi in Punjab without informing the police. The police started harassing my family then my wife told the police that I was living in my in-law's house. The police raided my in-law's house, luckily I got saved because I was not at home then I shifted to New Delhi and had started working at New Delhi in a workshop near Jama Masjid. After few days the two militants (same people from Srinagar) met me and kidnapped me to their house and forced me to go to Srinagar because they want to get ammunition that they had dumped with the help of my four workers, otherwise they threatened me to kill.

The militants kept me with them for 3-4 days, after that they brought me to Jammu in a train at 10 o'clock in the evening. We had spent a night in another person's house at Jammu and in the morning we got a Bus for Srinagar at 5.00 a.m. We reached Srinagar at 6.00 p.m, and we met another two militants. Two people were walking in front of me and two were following me. After reaching home I got a key of

2




workshop. When we were approaching the workshop, one police jeep was there for checking.   One Policeman recognized me and he ordered me to stop but we ran away. The police was following us. The militants also ran away. I spent a night outside my house. From there I made it to Jammu on a truck and then by bus to my in law place in Punjab. My wife and children also made it there and we all decided that it was not safe for me and that I should leave India.

After getting money from them I went to New Delhi to pay an agent for my travel from India. The travel agent helped me in preparing travel documents and also helped me getting into the United States of America through Russia, Belarus, Ukraine, Germany, Spain, and Mexico. I request you to approve my asylum case because if I were to go back to India, the police will kill me in a fake encounter.

I, Mahesh Kumar Pathak, hereby declare under penalty of perjury that the above declaration is true and correct. It has been prepared by the Law Offices of Hardeep S. Rai based on the information provided by me. I have read it and am satisfied with its contents.

*Mahesh Kumar Pathak*

Mahesh Kumar Pathak
Ocotber 14, 2000.

3

G

LAW OFFICE OF                                    NON-DETAINED
MARTIN RESENDEZ GUAJARDO
P.O. Box 2087
San Francisco, California 94126
T: (415) 398–3852
F: (415) 296–8730


DEPARTMENT OF JUSTICE
EXECUTIVE OFFICE FOR IMMIGRATION REVIEW
BOARD OF IMMIGRATION APPEALS
FALLS CHURCH, VIRGINIA

IN THE MATTER OF:                    §
                                     §
MAHESH KUMAR PATHAK,                 §
A78–659–983,                         §
                                     §    IN REMOVAL PROCEEDINGS
                                     §
Respondent                           §
                                     §

MOTION TO REOPEN DUE TO FUNDAMENTAL CHANGE IN
LAW AND TO STAY REMOVAL PENDING RULING ON MOTION



**U.S. Department of Justice**

Executive Office for Immigration Review

*Board of Immigration Appeals*
*Office of the Clerk*

*5107 Leesburg Pike, Suite 2000*
*Falls Church, Virginia 22041*

Guajardo, Martin Resendez, Esq
555 Clay Street
San Francisco, CA 94111-3029

**Office of the District Counsel/SFR**
**P.O. Box 26449**
**San Francisco, CA 94126-6449**

Name: PATHAK, MAHESH KUMAR

A78-659-983

Type of Proceeding: Removal

Date of this notice: 7/23/2007

Type of Motion:

Filed by: Alien

## FILING RECEIPT FOR MOTION

The Board of Immigration Appeals acknowledges receipt of your motion and fee or fee waiver request (where applicable) on July 23, 2007 in the above-referenced case.

## PLEASE NOTE

Filing a motion with the Board of Immigration Appeals DOES NOT automatically stop the Department of Homeland Security from executing an order of removal or deportation. If you are in DHS detention and are about to be deported, you may request the Board to stay your deportation on an emergency basis. For more information, call BIATIPS at (703) 605-1007.

In all future correspondence or filings with the Board, please list the name and alien registration number ("A" number) of the case (as indicated above), as well as all of the names and "A" numbers for each family member who is included in this motion.

If you have any questions about how to file something at the Board, you should review

80549

the Board's Practice Manual and Questions and Answers at www.usdoj.gov/eoir.

Proof of service on the opposing party at the address above is required for ALL
submissions to the Board of Immigration Appeals -- including correspondence,
forms, briefs, motions, and other documents.  If you are the Respondent or
Applicant, the "Opposing Party" is the District Counsel for the INS at the address
shown above.  Your certificate of service must clearly identify the document sent to the
opposing party, the opposing party's name and address, and the date it was sent to
them.  Any submission filed with the Board without a certificate of service on the
opposing party will be rejected.